THE STATE *v.* E. J. KREBS and G. F. KIMBALL.

General words in an act of incorporation, do not authorize the Company to do acts which by the public law are indictable; plain and positive words are necessary to convey such a privilege ; *therefore* the charter of "the North Carolina Real and Personal Estate Agency," in providing that "the said agency shall have the right and power to *sell and dispose* of any real or personal property placed in their hands for sale, *in any mode or manner the agency shall deem best,*" (Private acts of 1868-'9 c. 42,) did not authorize the Agency to sell property by means of a lottery.)

(*Raleigh & Gaston R. R. Co.* v. *Reid, ante* 155, cited and approved.)

INDICTMENT for promoting, &c., *a lottery,* tried before *Russell, J.,* at Spring Term 1870, of NEW HANOVER Court.

The defendants claimed a right to sell and dispose of personal and real property, among other ways, by lottery, under the private act of 1868-'9, c. 42, which chartered the North Carolina Real and Personal Estate Agency ; and the question was, whether such authority was given therein. The clause relied upon is given in the Opinion.

His Honor was of opinion that it was not.

Verdict and Judgment accordingly ; and Appeal by the defendants.

*Strange* and *Phillips & Merrimon,* for the appellants.
*Attorney-General, contra.*

PEARSON, C. J. It is an indictable offence, punished with fine and imprisonment, " to expose or set to sale any house, land or goods," &c., by means of a lottery : Rev. Code, ch. 34, sec. 69.

The charter of the " North Carolina Real and Personal Estate Agency has," among others, this provision : " And the said Agency shall have the right and power to *sell* and

*dispose* of any real or personal property placed in their hands for sale, *in any mode or manner the Agency shall deem best:*" Private acts of 1868-'9, ch. 42, (p. 59.)

Taking the act of incorporation by itself, the words are broad enough to authorize the Company to sell property by means of a lottery, and to establish agencies for that purpose in every county in the State.

Without room for doubt the General Assembly had power to confer this exclusive privilege upon the "North Carolina Real and Personal Estate Agency," if in its wisdom it was deemed promotive of the public good; and I dare say the draftsman of the bill, and probably many of the members who voted for it, intended to authorize the "Agency" to use "lotteries" as a means of disposing of property.

But that is not the question. The question is, do the words in the act of incorporation confer the privilege of selling or disposing of property by lottery, taking the act of incorporation in connection with the law of the land, and construing it by the precise rules of law, and the rules of construction established by the decisions of the Courts.

1. *On principle:* By the general law lotteries are prohibited, and any person using a lottery as the means of disposing of property, is subject to fine and imprisonment. When therefore it is said that the General Assembly confers on the "North Carolina Real and Personal Estate Agency" the exclusive privilege of violating the law of the land, it is reasonable for the Courts to require that this intention should be expressed in plain and positive words, and if general words only are used, it will be taken as of course that a privilege conferred by a private act of the General Assembly, is subject to, and restricted by the general law. It would be indecent for the Court to suppose that the members of the General Assembly meant to confer this privilege, and resorted to general words because of the fear of their con-

stituents, and of public opinion. If it was the intention to confer on this Company the exclusive privilege of selling and disposing of property '· by means of lotteries," it was so easy to say so in plain words, that the Court cannot give this effect to general words, without by implication supposing that the General Assembly used general words *covertly*; that is, in plain English, on purpose to confer a franchise to sell property by lottery, and did not say "lottery" for fear of shocking the moral sense of the community.

2. *On authority:* In regard to the construction of charters like this, see *R. & G. R. R. Co.* v. *Reid, ante* 155, and the cases referred to by Cooley on Constitutional Limitations, 395.

3. On the whole our conclusion is, that general words in an act of incorporation do not authorize the Company to do acts which by the public law are indictable; plain and positive words are necessary to confer such a privilege.

It is a wonder that so great a nuisance should have been tolerated by the public authority for so long a time. The general repealing clause in the charter has no effect, inasmuch as the enacting clause, by the construction put on it, does not confer the privilege.

There is no error.

This will be certified to the end that the Judge of the Superior Court may pronounce sentence, &c.

PER CURIAM.                                    No error.