RALEIGH & AUGUSTA AIR LINE R. R. CO. *v.* J. J. WICKER
and others.

The rule for the assessment of damages to lands taken for railroad pur-
poses. with regard to the benefit to the land arising from the con-
struction of the road, as settled in this State, is: The jury shall not
deduct from. or set off against, the damages special to the land, a
part of which is taken, any benefits arising from the railroad under
construction, which are common to the owner and all other persons
in the vicinity; but may deduct or set off any benefit peculiar to the
land.

The owner is entitled to recover, for the expense of any additional
fencing of cultivated lands, made necessary by reason of the construc-
tion of the road; but as he is not required by law to fence uncleared
or uncultivated land, and the expense of fencing such, should it at
any future time be cleared or cultivated, is too remote and uncertain
to be estimated, the same should not be taken into consideration.

If by the construction of the road, water be ponded upon the land  the
owner may recover damages, if the ponding be the result of the ob-
struction of a natural or artificial drain way; otherwise, if the pond-
ing be the result of an alteration of the previous grade of the land,
caused by the construction of the road bed.

The danger that the cars of the railroad company may in·ure the cattle
of the land owner without negligence, is not peculiar to the land
owner, a part of whose land is taken, but common to all who own
cattle near the line of the road; and as the owner is not required to
abate the damages to his land. on account of any benefit he may de-
rive from the road in common with adjacent land owners, he is not
entitled to be compensated for any damages which are in like man-
ner common.

(*Fr.edle* v. *N. C. R. R. Co* , 3 Jones, 89; *State* v. *Kreble*, 64 N. C. Rep.,
604, cited and approved.)

This was a SPECIAL PROCEEDING tried upon appeal from the
award of commissioners appointed to assess the damages
arising from the construction of the road of the plaintiff
through the lands of the defendant, before *Buxton J*, at
Spring Term, 1875, of the Superior Court of MOORE county.

Commissioners were appointed upon the petition of the

plaintiff to assess the damages arising from the construction of the plaintiff's road bed through the lands of the defendant. The damages were assessed at the sum of four hundred dollars, and the plaintiff objected to the finding of the Commissioners on the ground that the damages assessed were excessive; the objection being overruled the plaintiff appealed.

When the case was called for trial, all irregularities were waived and the only question submitted to the jury was as to the amount of damages.

The plaintiff is a corporation originally chartered under the name of "The Chatham Railroad Company." By a subsequent statute, chap. 11, acts of 1871–'72, the name was changed to "The Raleigh and Augusta Air Line Railroad Company."

By an act amending the charter of the Chatham Railroad Company (Private Acts 1862–'63, chap. 26, sec. 7) it is provided that in making the valuation, the said commissioners shall take into consideration the loss or damage which may accrue to the owner or owners in consequence of the land or right of way being surrendered, and the benefit or advantage he, she or they may receive from the erection or establishment of the railroad or works, and shall state particularly the value and amount of each, and the excess of loss or damage over and above the advantage and benefit shall form the measure of the valuation of said land or right of way.

In Bat. Rev. chap. 99, sec. 15, entitled "Railroad Companies" the rule of compensation is stated differently, it being provided "in determining the amount of such compensation, they (the commissioners) shall not make any allowance or deduction on account of any real or supposed benefit which the parties in interest may derive from the construction of the proposed railroad."

Preliminary to the introduction of evidence, the question was raised which rule of damages shall be adopted in this

case ? The court held that the rule laid down in the charter should be adopted.

It was in evidence that the plantation of the defendant consisted of two hundred and seventy-five acres of land, valued by the several witnesses at prices ranging from $5 to $8 per acre. The bed of the road upon the defendant's land is two-thirds of a mile in length, and the land condemned for the use of the road covers about sixteen acres. The track runs within about a quarter of a mile of the defendant's house. About two-thirds of the road runs through old fields and gullies, not fit for cultivation, and a small part thereof through valuable meadow lands worth ten dollars per acre.

Owing to the gullies and ravines and also to the excavations and embankments of the road, there are three crossing places, one of these is the public county road, which by reason of an excavation has been changed from a direct line, requiring a detour of fifty yards down the track and fifty yards back instead of crossing directly over the road in its original course. Owing to insufficient culverts, water is sometimes ponded on two or three acres of the defendants' land. The crossing near the dwelling used to be good. It is interrupted now. In running through the orchard a row containing twelve apple trees was buried to the height of two or three feet. Waste dirt from one to two feet in depth, and piles of rock from one to nine feet high are scattered along the line of the road, off the condemned land, and upon the plantation of the defendant.

There was a great diversity of opinion among the witnesses as to the amount of damage sustained by the defendant. There was much evidence as to the advantages and disadvantages arising from the construction of the road.

His Honor charged the jury:

That the enquiry for them to make was: how much more was the land of the defendant damaged than benefitted by this railroad crossing it. In considering this question the

jury are to remember that railroads were useful enterprises, promotive of public good, sanctioned by law, and authorized to enter upon the land of the citizens: so that there was nothing wrong or in the nature of trespass in the act of entry by this company. The object of this proceeding was to compensate the owner for the damage necessarily sustained. In making their estimate the jury should not take into consideration any mere fancied injury or benefit, or remote probability of advantage or disadvantage; they were to consider the direct consequences necessarily resulting from the railroad passing through the farm, not the remote speculative or contingent damage. For instance, they might take in consideration the circumstances mentioned in evidence, that about sixteen acres were appropriated for the track—the increased fencing required—the ponding of water on the land, the space occupied by waste dirt and rock, the inconvenience occasioned by obstructing the passage from one part of the farm to another, and the liability to injury to which the stock on the farm would be exposed. These were consequences flowing directly from the passage of the road through the farm and tended to render it less valuable. On the other hand the jury would reject from their consideration such circumstances as the worry of mind, or possible pillage of fruit, or other depredations apprehended by counsel in their argument, from railroad hands.

To the charge of his Honor the plaintiff excepted.

The jury rendered a verdict in favor of the defendant, assessing the damages at $450.

Thereupon the plaintiff moved the court for a new trial, on account of error in the charge of his Honor, in including among the circumstances which the jury might properly consider, as depreciating the value of the land, " the liability to injury to which the stock on the farm would be exposed."

The motion was overruled and the plaintiff appealed.

*Manning*, for the appellant.
*Neill McKay*, contra.

RODMAN, J.  I.  The Judge below was of opinion that the rule for the measure of damages to an owner of land condemned for the use of the railroad, prescribed in the charter of the company, (Private Acts 1862-'63, chap. 26, sec. 7,) was different from, and controlled, that prescribed by the general law, (Bat. Rev., chap. 99, sec. 16,) and he directed the jury in assessing the damages, to consider and deduct therefrom the benefits of the road to the defendant's land.  This opinion of the Judge was adverse to the defendant, and as he has not appealed, no question upon it comes to us for decision.

As the question, however, is of general importance and will necessarily arise upon a new trial, it may be useful to make some observations upon the opinion of the Judge on this point, although they are not necessary to a decision of the case.

It is an admitted rule that all special grants of special benefits and privileges, whether to corporations or to individuals, contrary to the general law, are to be strictly construed, and will not be enlarged against the public by intendment.  All such grants must be interpreted with and in subordination to the general law, unless it clearly appears that the Legislature intended to depart from the general law and to repeal it as respects the particular grantee, and to confer on him peculiar privileges.  An illustration of this rule of interpretation is found in *State* v. *Krebbs*, 64 N. C. Rep., 604.

The rule with respect to the assessment of damages to land taken for railroads upon the point under consideration, is settled in this State, *Freedle* v. *N. C. R. R. Co.*, 4 Jones, 89, and has been recognized in so many States that it may now be taken as the general law of the United States.  Cooley Con. Lim., 565 ; *Swaze* v. *N. J. Midland R. W. Co.*, N. J., 297 ; *Walker* v. *Old Colony, &c., R. W. Co.*, 103 Mass., 10 ;

_Elizabeth Town_, &c., _R. R. Co._, v. _Helm_, 8 Bush. 681, (Ky.) ; _Lee_ v. _Tebo_, &c., _R. R. Co._, 63 Mo., 178.

The rule, as gathered from the cases cited, is this : The jury shall not deduct from, or set off against, the damages special to the land, a part of which is taken, any benefits arising from the railroad under construction which are common to the owner and to all other persons in the vicinity, but may deduct or set off any benefits peculiar to the land. The charter may, without violence, be interpreted as meaning to express this rule, and if it does, it is in conformity to the gen eral law.

II. It is difficult to reconcile all the cases in which it is attempted to declare more particular rules for estimating damages in cases like the present. The following are consistent with the current of authority, and seem just and reasonable. The land owner is entitled to the market value of the land taken by the company. In addition to this, he is entitled to any damage accruing to the part not taken, by reason of its being separated into two sections by the road, under which will be considered the difficulty of getting to one from the other by reason of the elevation or depression of the road bed, and of the piles of earth and stone along the line of the road ; the inconvenience, if any, of having a tract cut up into small or irregular sections ; that arising from the deflection of the public road crossing the railroad from its accustomed crossing place to another one, and all other injuries incidental to the taking of the land. That these were properly to be con- considered in the estimation, does not seem to have been a dispute on the trial. The jury were at liberty to consider them under the instructions given by the Judge, and they seem to have done so.

There are three sources or grounds of damage which the Judge instructed the jury that they might consider, in respect to which his instructions are excepted to :

15

1. The expense of the additional fencing made necessary by the road.

Every planter of cultivated land is required to keep it enclosed by a sufficient fence, and if the road makes necessary additional fencing to enclose the cleared land of the defendant, it is to be considered in estimating the damages to him from the road. *Freed le* v. *N. C. R. R. Co.*, *ub. sup.* If by reason of the steepness of the railroad cut or embankment, prohibiting the access of cattle from the land occupied by the company, no additional fencing is made necessary, of course nothing will be allowed on that account.

As to the expense of fencing uncleared or uncultivated land, that should not be taken into consideration. The owner is not required by law to enclose such land, and it is not usually done. No damage in this respect is done to the land in its present condition, and any damage by reason of the necessity of fencing, in case the land shall at any future time be cleared, is too remote and uncertain to be capable of estimation. Moreover, the Legislature has thought proper not to impose on railroads in this State, the duty of fencing their lines of road. If, however, it should be held that every owner of wild land through which the road passes could recover as damages the cost of such fencing, a heavier burden would be imposed on the companies than if they were required to make the fences themselves. And as the fences would rarely be built, neither the company nor the public would receive the benefit which their erection is intended to secure. With this qualification we concur with his Honor as to this element of the damages.

III. The Judge instructed the jury that they might consider the ponding of water on the land of the defendant. In *Walker* v. *Old Colony, &c., R. W. Co*, 103 Mass., 10, a distinction is taken between cases in which the ponding is caused by the obstruction of a natural or artificial drain way; and

where it is caused by the alteration of the previous grade or slope of the land, by which the surface water on defendant's land is prevented from running off as it was accustomed to do. In the first of these cases, it is held that the resulting damage should not be estimated in measuring the compensation to the land owner; but that in the second it should be. The distinction at first sight may seem over refined and unreal. But on reflection, it will be found to be a substantial one. In the first of these cases, it is the duty of the company in constructing its road bed to leave a space sufficient for the discharge of the water through its accustomed drain way, whether natural or artificial. If it fails to do so, any owner whose land is injured, whether he be one a part of whose land is taken for the road or not, may compel the company to discharge its duty by opening the drain to its previous capacity. And so if the obstruction causes a nuisance, the corporation may be compelled to abate it. If the damage to the land of the defendant from this cause should be assessed to him, the corporation would acquire against him a right to pond his land perpetually, but not against any adjoining or other person injured, or against the public if it creates a nuisance. These might deprive the corporation of its use of the defendant's lands by reason of their right to compel it to open the drain. Under a rule which should subject the corporation to damages in cases of this sort, it would pay for a right which it could never get. And even if the ponding were entirely on the land of the defendant, so that this result would not follow, and the corporation would obtain a perpetual right to flood the land; yet it is contrary to public policy to give to one not the owner of the soil, a right to reduce any land to perpetual uselessness, without necessity and without a corresponding benefit to any one.

The case of surface water is different. Every one has a right to build on or otherwise improve his own land, subject to certain equitable limitations which it is not necessary now

to state.  If, as an incidental consequence of this lawful use, the flow of the surface water from adjoining land is obstructed, the owner of such land cannot recover damages as for a tort. Wood on Nuisances, s. 383 ;  *Waffle* v *N. Y. Central R. R. Co.,* (N. Y. S. C.) 421 ;  *Rawstron* v *Taylor,* 11 Exch. 369.

As the defendant could not hereafter compel the corporation to remove the surface water thus ponded on his land by the lawful construction of the road, he is entitled to have any incidental damage from that cause, assessed to him in measuring his compensation for the land taken.

The case does not show the nature of the ponding on defendant's land.  The instructions of his Honor on this point were too general and not therefore strictly correct.  But as they were not excepted to on that special ground, we should not be disposed to sustain the exception and to grant a new trial on that ground alone.

3. His Honor instructed the jury that they might allow to the defendant damages on account of the possibility that his cattle might be killed by the trains on the road.  He had previously instructed them that they might allow damages from the necessity for additional fencing, and we have said how far in our opinion his instructions on that point were correct.  It is clear that if the defendant is allowed as damages the expense of additional fencing on his cultivated land for preventing his cattle from straying on the road, he ought not to be also allowed damages for the danger which his cattle may incur by doing so.  That is a risk which he has received an indemnity for.  And it might be a question, whether if after having the expense of fencing allowed him, he should fail to maintain a fence, by reason of which failure his cattle strayed from his cleared land upon the tract of the road and were there run over, and the cars thrown from the track and the corporation thereby damaged, it could not recover damages from him for the neglect.  It is said however, that admitting

that the defendant has been allowed compensation for the additional fencing of his cultivated land, he has been allowed none for fencing his wild land; that he has a right to graze his stock upon that, and that they may stray from there upon the road and be injured, and therefore he is entitled to be compensated for this risk which has not been allowed for, and that although it is true that if the cattle straying upon the road are injured by the negligence of the corporation their owner can recover damages, yet some cattle may be killed without negligence in the corporation, and for the increased danger of this sort the land owner is entitled to compensation. The answer to this is, that the danger that the cars may injure cattle without negligence and consequently without liability to an action, is not peculiar to the land owner a part of whose land is taken. It is common to all who own cattle near the line of the road, whether a part of their land is taken for the road or not. It is clear that those persons, no part of whose land is taken, cannot recover anything for this danger of possible loss, and as the defendant is not required to abate the damage proper to him by reason of any benefits which he may derive from the road in common with the whole neighborhood, so he is not entitled to be compensated for any damages which are in like manner common, such as this we are considering, or such as may arise from smoke, noise, &c. In *Presbery* v. *Old Colony, &c.*, N. C. W. Co., 103, Mass. 1, and *Elizabeth town, &c., R. R. Co.*, v. *Helm*, 8 Bush. (Ky.) 681, the court says, " such depreciation is not occasioned directly by any effect upon the land of which the construction or the maintenance of the railroad is the cause. It belongs to that class of results which necessarily arise from the exercise of the franchise granted to such corporations in consideration of the general advantage which the whole community are expected to derive from it. The annoyances to the land owner are the same in kind, with those which are suffered by the whole community."

We think the Judge substantially erred in holding that the danger of injury to cattle was an element in the damages to which the defendant is entitled.

PER CURIAM.                               *Venire de novo.*