JOHN LONDON, Guardian, &c., v. SOL. BEAR.

*Trespasser, what constitutes—Constructive Possession sufficient to maintain action against.*

1. Where one supposing himself an executor entered upon the lands of the ancestor claiming to hold for the benefit of the estate, and rented them out receiving the rents therefor; *Held,* that such holding is not adverse to the legal title, nor is it equivalent to an abatement or disseizin, and therefore the heirs or devisees have a constructive possession sufficient to maintain an action in the nature of trespass *q. c. f.*

2. *Held also,* That the action may be maintained not only against the lessee of the acting executor, but also against the lessees of such lessee who are equally trespassers with him.

3. *Held further,* That the mere acceptance of rent by the defendant from his lessees for the premises without an actual entry on his part upon the same, or his putting them in possession thereof, is sufficient to make him a trespasser.

(*Tyson* v. *Harrington,* 6 Ired. Eq., 329; *Kennedy* v. *Wheatley,* 2 Hay., 402; *Dobbs* v. *Gullige,* 4 Dev. & Bat., 68; *McCormick* v. *Monroe,* 1 Jones, 13; *Smith* v. *Ingram,* 7 Ired., 175; *Patterson* v. *Bodenhammer,* 11 Ired , 4; *Horton* v. *Hensley,* 1 Ired., 163; *Brittain* v. *McKay, Ib.,* 265; *Lawson* v. *Smith,* 4 Dev., 232, cited and approved.)

CIVIL ACTION brought by the plaintiffs against the defendant to recover damages for an alleged unlawful entry upon and occupation of certain real estate in the city of Wilmington, tried at Fall Term, 1880, of NEW HANOVER Superior Court, before *Gudger, J.*

Eli W. Hall, the owner of the lots on which the alleged trespasses were committed, died in 1865, leaving a will, and in an insufficiently executed codicil attached thereto appointed Edward D. Hall, executor, who was permitted to qualify as such. Assuming to act as executor, he took possession of the lots and rented them out for several years preceding October 1st, 1872, and this action is prosecuted to recover damages for trespasses committed on them from

that date until the entry of plaintiffs two years thereafter. It is not shown whether any authority is conferred by the testator upon his executor in the premises, nor whether the plaintiffs derive their title as devisees under the will of their father, Eli W. Hall, or as his heirs at law, but as their title is not disputed, it is not material to enquire how it becomes vested.

It was in evidence that one Finlayson occupied part of the premises under a contract with Hall who by an instrument in writing on May 27th, 1872, assigned the rent to be paid by Finlayson to the defendant partly in payment for goods bought from him, and with a reservation of the excess of rent to Hall.

A witness, Godfrey Hart, testified that he rented part of the premises from the defendant for the year following October 1st, 1872, and paid him therefor, but was not put in possession by the defendant, and that he sub-let the store thereon for the same period to one Charles Wessell who entered and occupied during the term, and for which, according to Wessell's testimony, he paid $450 to Hart.

It was also in evidence that the witness leased the same store from defendant for the succeeding year, ending October 1st, 1874, and continued in the use and occupation for that term, paying a monthly rent of about twenty-nine dollars, and an additional sum of one hundred dollars to the defendant.

It was further shown that defendant leased another store for one year beginning October 1st, 1873, to one Hines who was already in possession and continued his occupation through the term and paid the rent to the defendant.

The written assignment made by Hall on the 27th of May, 1872, transfers to defendant "the entire rent of the store on North Water street now occupied by M. U. Finlayson (being No. 42 Hall Row) from October 1st, 1872, to

October 1st, 1873." Two other instruments in writing and under seal were exhibited in evidence; the one, executed by defendant on the 7th of August, 1873, in which he assigns to Hines " all the right and interest which he has in the store known as No. 44 * * * under and by virtue of a certain paper writing executed to him by E. D. Hall, executor of Eli W. Hall, on the 13th of January, 1873," with a clause releasing the assignor from liability for loss or damage for injury or destruction by fire on and after January 1st, 1874; the other, executed by defendant and Wessell on the 15th of August, 1873, in which for the consideration of $350 the former assigns to the latter all the right and interest which he has in the storehouse known as No. 41, under and by virtue of a certain paper writing under seal which was made by E. D. Hall, executor of Eli W. Hall, to the defendant on the 27th of January, 1873.

Upon this evidence the defendant's counsel contended that plaintiff could not recover in this action :

1. For that the plaintiff was not at the time of the alleged trespasses in actual or constructive possession of the land, such possession being then in Hall and those claiming under him ; and

2. For that the defendant did not participate in the trespasses nor authorize or sanction them so as to become legally liable therefor.

The court was asked to give these instructions to the jury, which the court refused, and charged that an adverse possession is a claim of right against the world, and that Hall in renting out the lots as executor did not undertake to set up a possession adverse to the right of the plaintiffs, and his possession was theirs; and that if the defendant himself or others under his authority or by his conduct occupied the premises and he received the rents and profits thereof, he would be liable to the plaintiffs. To the charge thus given, the defendant excepts, and, (the exception to

the instruction as to damages being abandoned) its correct-
ness is the only subject of consideration by this court, upon
the defendant's appeal from the judgment below.

*Mr. E. S. Martin,* for plaintiffs: Plaintiffs have shown
legal title, and no adverse possession being shown, this gives.
them a constructive possession sufficient to maintain action.
C. C. P., § 25; *Dobbs* v. *Gullige,* 4 D. & B., 68; *Smith* v. *In-
gram,* 7 Ired., 175. What is disseizin in this state? *Tyson*
v. *Harrington,* 6, Ired., 333. Adverse possession. *Parker* v.
*Banks,* 79 N. C., 485. After re-entry, disseizee may main-
tain action against disseizor and all who entered under him.
*Green* v. *Biddle,* 8 Wheat., 75; 1 Waterman Trespass, § 931;
*Smith* v. *Ingram, supra; Graham* v. *Houston,* 4 Dev., 232.
And the reception of rent alone without an actual entry is
sufficient to constitute a trespass. 11 Wheat, 280; *Horton*
v. *Hensley,* 1 Ired., 165.

*Messrs. McRae & Strange,* for defendant: Complaint being
for independent action of trespass on first of October, 1872,
and unconnected with original dispossession by Hall in 1866,
action of trespass *q. c. f.* would not lie under the old system,
nor will this action, as the principles of law are not changed,
but only the forms of action are abolished. 65 N. C., 209;
80 N. C., 191. The act of Hall if adverse was an abate-
ment which is recognized here as distinguished from disseizin.
*Freeman* v. *Perry,* 3 Dev. Eq., 247; 1 Dev. Eq., 158. Heir
or devisee cannot after entry maintain action *q. c. f.* against
abator or one who enters under him. 7 Com. Dig; 2 Roll.
Abr., 553. And constructive possession does not change
this rule (though it might enable plaintiffs to sue for the act
of dispossession) and their action is for a trespass alleged
when they had neither actual nor constructive possession.
The *post liminium* relates only to actual possession and dis-
seizin. *Tobey* v. *Webster,* 3 John., 468. The law will not put a

fiction on a fiction to make a possession. Act of Hall a dispossession under rule in *Tyson* v. *Harrington;* whether a disseizin, abatement or dispossession, plaintiffs cannot sue for distinct trespass occurring in 1872, but only for a continuing one from original act of dispossession. *Smith* v. *Ingram* and *Patterson* v. *Bodenhammer,* discussed. Doctrine of relation is never applied to affect an innocent party injuriously, even where he comes in by right or title under disseizor. *Leford's case,* 11 Coke Rep., 51. See also 14 E. C. L. Rep., 61.

SMITH, C. J., after stating the case. The defendant's counsel has discussed the nature and effect of a disseizin under the ancient law upon the title of the owner, and wherein it differs from an abatement in which the descent or devise from an ancestor is intercepted by a hostile entry upon the heir or devisee, to which this case is assimilated. And he maintains that as there was no actual or constructive possession in the plaintiffs at the time of the alleged invasion by the defendant, their entry in October, 1874, could not by relation to a period antecedent to the original trespass render the defendant liable for an intermediate occupancy. We concur with him that this action is for an injury to the possession, and that the principles which govern it are unchanged by the new system which condenses into one the different forms which were before in use. But the argument proceeds upon a misconception in ascribing to a dispossession of the owner the same legal effects that flow from an act of disseizin or abatement. Even in the latter case, the re-entry of the disseizee remits him to his first possession as if he had never been out of possession, and then *all who occupied in the meantime by what title soever they come in,* shall answer unto him, * * * for otherwise it would be mischievous unto him, for after his re-entry he shall have no remedy for the mesne profits. *Holcomb* v. *Rawlins,* Cro. Eliz., 540. But disseizin, in the sense of taking the seizin or estate

from one man and placing it in another (Pres. Abs., 284,) is not the necessary result of dispossession, and the estate of the owner is divested when that possession is adverse and is continued for a series of years unbroken under the requirements of the statute or until it raises a presumption of a conveyance. The distinction between them is so clearly traced and pointed out by the late Chief Justice in an able review of the subject in *Tyson* v. *Harrington*, 6 Ired. Eq., 329, that we prefer to reproduce what is said in the opinion in that case: "Disseizin is an ouster of the freehold, and is where one enters and turns out the tenant and usurps his place and feodal relation, which can only be done by the concurrence and consent of the feodal lord. The latter circumstance distinguishes a disseizin from a dispossession." Then after quoting the words of LORD MANSFIELD to the effect that a tenant could not against his will be disseized by the mere act of a wrong-doer as long as he had the right of entry, but if he saw proper, he might elect to consider himself disseized for the sake of the remedy against disseizors, the Chief Justice announces this conclusion: "A freeholder cannot now be disseized of his seizin but by a dispossession aided by the act of the law which takes away his right of entry, * * *. Hence a descent cast can now have no effect. If the descent before the right of entry is lost, the entry is not tolled; if after, then it has no effect; for the right of entry must have been already taken away to constitute a disseizin. In this state, after a possession of seven years under color of title, the law recognizes and concurs in the right of the wrong-doer, and the right of entry on the part of the former owner is taken away. *There is then a disseizin and not before.* If a descent is cast before the seven years expire, the entry is not tolled, for there is no disseizin; if after, it can have no effect, for the estate was gone before." This is said of course when the persons from whom the land is adversely withheld are not

under legal disabilities, and as to such as are, a longer period is required.

The doctrine is well established in this state, that in the absence of possession in another, he who has the legal estate is in construction of law in possession and may maintain an action of trespass for an unauthorized entry upon the land. *Kennedy v. Wheatley*, 2 Hay., 402; *Dobbs v. Gullige*, 4 Dev. & Bat., 68.

"In ejectment," remarks Nash, C. J., "the lessor of the plaintiff must show a legal title to the premises in dispute. In trespass, the plaintiff not in actual possession must do the same. * * * If he has shown a legal title to the land in dispute, that title draws to it the possession, there being no adverse possession." *McCormick* v. *Monroe*, 1 Jones, 13.

"In England," says Ruffin, C. J., "an actual re-entry upon the *locus in quo* is necessary, because possession by an actual occupation of the very part is requisite to maintain trespass. But here even a constructive possession suffices." *Lawson* v. *Smith*, 4 Dev., 232.

While the action of the ousted owner only lies for the original unlawful entry until he regains his possession, "then the law," says Daniel, J., "by relation would adjudge him to be in possession from the first ouster, and enable him to recover damages for all the time the defendant had wrongfully withheld the land and kept him out of possession. *Smith* v. *Ingram* 7 Ired., 175.

It would seem to follow unavoidably that the plaintiffs' entry in October, 1874, restored and made continuous that possession which accompanied the transmission of the title from their father, whether by descent or devise, and remained until broken, if it were broken, by the action of the executor and his assumption of control over the property in his capacity as such, and redress could be obtained for any and every injury by whomsoever committed during the

intermediate period. If this were not so, depredations without number and without stint would be without remedy to the owners. In the plain but forcible language of the court in the case cited from Croke's Reports: "It is not to be doubted but that the disseizee after his *re-entry shall punish the second disseizor and the servant of the first disseizor who occupied under the master.*"

The argument that there must have been a possession in the plaintiffs when the first invasion was made by the defendant and the first trespass done, in order to the operation of the rule that extends the entry back to connect with it, rests somewhat upon an expression used by NASH, J., delivering the opinion in *Patterson* v. *Bodenhammer*, 11 Ired., 4, and quoted in the brief. A reference to the facts of the case and the general course of reasoning however show that it is no authority for his proposition. The plaintiff showed no title and undertook to maintain his action upon the possession alone and only proved that he put "some empty barrels and boxes in a house on the land and nailed plank over the spaces left in the walls for a window and a fireplace. A year after Bodenhammer pulled off these boards, threw out the plaintiff's goods and leased to another defendant for one year, and he put some wagon timber in the house." In this condition the premises remained for nearly two years when the defendant removed the house, and this removal constituted the trespass for which suit was brought. The court used this language: "If they (the plaintiff's acts) were sufficient to give Patterson *the actual possession,* similar acts on the part of the defendant were sufficient to divest him of it and place the actual possession in the defendant. The acts were of the same character and must carry with them the same effects. Two years after Bodenhammer had dispossessed the plaintiff, and while his possession, so acquired, continued, the house was removed. *To enable the plaintiff to maintain an action for the removing of the*

*house he ought to have re-entered before the house was removed and thereby revert the possession in himself."*

It is manifest that no reference is made to the operation of the *post-liminium* rule, in extending back to a former, a possession restored by the owner's re-entry, and covering all the intermediate interval, so that redress may be had for all the damages meanwhile done to the land.

The plaintiff's right of recovery then existed outside of the question whether the occupation and control of the premises by the acting executor was hostile or permissive or in subservience to the rights and interests of the infant owners, since their possession reaches back to a period antedating such assumed authority, and whether the ruling of His Honor in regard to the character of the possession by Hall be erroneous or not, it does not affect the plaintiff's action. And while we do not propose to pass upon the ruling, we are not prepared to dissent from it.

We think it equally plain that the transfer of the defendant's interest in the case and his acceptance of full rent therefore, are an assent and sanction to the trespass committed under its authority, for which he is equally liable with his assignee. As is observed by GASTON, J., in *Horton v. Hensley*, 1 Ired., 163, "in trespass, all persons, aiders and abettors, nay those who are not even privy to the commission of a trespass for their use and benefit, but who afterwards assent to it, in the judgment of the law, are principals." One is liable who procures the act to be done by inciting others. 2 Greenl. Ev. § 621. See *Britian v. McKay,* 1 Ired., 265.

The defendant's conduct is a legal participation in the illegal occupancy by the others acting under him.

There is no error and the judgment must be affirmed.

No error.                                     Affirmed.