WALDROP v. GREENWOOD, LAURENS & SPARTANBURG R. R. CO.

1. In action against a railroad company to recover damages for injury done to plaintiff's crop by an insufficient culvert, it was competent for defendant to ask plaintiff how much of his damaged crop was planted on defendant's right of way.

2. Statements of a section master as to the drainage of a railroad embankment are not admissible in evidence against the company, for that is a matter not within the scope of his agency.

3. In action to recover damages for an injury done, the amount of the

damages is one of the material issues involved, and there being no testimony as to the pecuniary loss sustained, a non-suit was properly ordered.

4. An offer by defendant to pay $5 in satisfaction of the damages claimed was not an admission of damage done to that extent.

5. The rights of the proprietor of land over the surface water naturally flowing upon the lands of adjacent owners, considered but not decided.

Before FRASER, J., Abbeville, February, 1887.

This was an action to recover damages as stated in the opinion of this court.

During plaintiff's examination as a witness in his own behalf, he said he informed the section master of the effect of a certain rain on his crops, and was proceeding to state what the section master replied, but upon objection was stopped by the court. On the cross examination of the plaintiff, he was asked by defendant's counsel, against objection, how much of the cotton described was made within 100 feet on the left of this railroad, and he made answer thereto. To these rulings plaintiff excepted. Other matters are stated in the opinion.

*Messrs. Graydon & Graydon,* for appellant.

*Messrs. Jos. Ganahl* and *E. B. Gary,* contra.

March 1, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The appellant brought the action below to recover damages for an injury to his land and crops, alleged to have been occasioned by a defectively constructed road-bed and an insufficient culvert, by reason of which water, instead of flowing off naturally, had accumulated and overflowed his land, rendering the same unfit for cultivation and injuring his crop growing thereon. Upon the close of appellant's testimony, on motion of respondent, his honor, Judge Fraser, granted a non-suit in a short order, of which the following is a copy : "At the close of plaintiff's testimony in the above stated case, the defendant having moved for a non-suit on the ground of failure of proof on the part of the plaintiff, and it appearing to the court that the motion should be granted ; now, on motion of * *

\* : It is ordered, that the plaintiff be non-suited and the complaint herein be dismissed."

The appeal questions the correctness of this order upon several grounds, to wit: 1. Because it was error in his honor to permit defendant's attorneys to ask and to require plaintiff upon cross-examination to answer the following question: "How much of corn and cotton, which you claim to have been damaged, was planted within one hundred feet of the railroad track?" 2. Because it was error in his honor to refuse to allow plaintiff to state what he said to the section master having in charge the piece of the road which runs through the plaintiff's land, and what reply the section master made. 3. Because he was in error in holding at the conclusion of plaintiff's testimony, that there was no evidence to go to the jury and in granting a non-suit. 4. Because it was error in his honor, after the testimony was taken, to grant the order of non-suit, the said order being in all respects contrary to law and the evidence taken upon the trial.

The appellant alleged in his complaint damage to his growing crop, and in his direct examination had testified that said crop consisted of both cotton and corn, and we don't see that defendant's question as to the location of the crop, whether within a hundred feet of the track or not, was incompetent. One ground of the defence was substantially, that injury to crops growing on the respondent's right of way could not sustain the action. And it seems to us to have been a very pertinent question, after appellant had testified that his crop had been injured, for respondent to ask whether said crop was within the right of way or not.

As to exception 2nd. It is true that a section master is the representative of the company within the scope of his agency and duties; and what he says and does within that limit will generally bind the company. But the exclusion of the testimony referred to in this exception does not appear to have violated this rule. The section master, as we understand, is charged with keeping the track in order for the safety of the trains, and the conversation here between the appellant and the section master proposed to be introduced did not seem to have any reference to the track within the scope of the section master's duties, to wit, as to its safety for the trains, &c., &c.

This brings us to the order of non-suit. A non suit is proper when there is a total failure of testimony as to one or more of the material allegations in the complaint, which, as we have often said, is a question for the judge who hears the case. If there be testimony as to all of the material allegations, the force and effect of which must be determined, the case must go to the jury; but if there be an absence of all evidence as to any one or more of such allegations, then a non-suit must follow. Now, here the material allegations, and upon which the parties were at issue, were, that by a defective road-bed and an insufficient culvert constructed by defendant upon plaintiff's land, water which but for said road-bed would have flowed off naturally, accumulated and by overflowing plaintiff's land had injured it and his growing crop in the sum of seventy-five dollars. Analyzed, these are the issues: 1st. The character of the road-bed and culvert. 2nd. The accumulation of water in consequence, which otherwise would have flowed off. 3rd. Overflowing and injuring appellant's land and crops, one or both. And 4th. A pecuniary loss of some definite amount.

Now, the order of non-suit does not state distinctly which of these allegations was without testimony. It simply states in general terms that defendant having moved for a non-suit on the ground of failure of proof on the part of the plaintiff, and it appearing to the court the motion should be granted, it is ordered, &c., &c. The plaintiff, appellant, was the only witness examined, and we find in his examination some testimony as to all of these issues except the last. He gave it as his opinion that the culvert was insufficient to carry off the water, and he described the culvert. He stated that the water had backed and covered some of the land, had seeped through and injured his crop on the other side of the track. This, perhaps, would have been enough to carry the case to the jury as to these matters, and if there had been any testimony as to last allegation, then the case no doubt would have gone to the jury.

The last allegation was a pecuniary loss of some definite amount, and to entitle it to go to the jury there should have been some testimony directed to such loss, and by means of which the jury could estimate it in dollars and cents. True, the appellant said

generally his land and crops had been injured, but as to the extent of the injury in money no evidence was furnished, and if the case had gone to the jury in the absence of such testimony, we do not see how a verdict could have been rendered as to that question. The appellant stated the usual price of corn and of cotton and the probable production of his surrounding lands not injured by the water, but as to the precise point in issue, to wit, whether the appellant had lost anything, and if so, how much, by failing to cultivate the land in question, there was no direct evidence nor any collateral facts from which an inference might be drawn, the whole matter being left to speculation based not upon sworn testimony, such as the law requires, but upon the supposed knowledge of the jury of agricultural matters.

We do not think the averment in the answer of defendant, that plaintiff had at one time before suit agreed to take $5 in satisfaction of all damages, and that defendant had agreed to pay this sum, should be construed into an acknowledgment by defendant that damages to that extent at least had been done. A party sometimes prefers to buy his peace rather than to litigate for it.

A very important and interesting question was raised in the argument before us in this case, involving the point whether, if the injury complained of here resulted from the action of surface water as contra-distinguished from a running stream with distinct channel, any action accrued to the plaintiff. It did not appear distinctly in the complaint whether the water was from a running stream, or was surface water. Nor does it appear that his honor made any positive ruling on the question suggested. All that appears is found in his honor's remarks on a proposed amendment of the defendant to the "Case" prepared by the plaintiff for appeal. The defendant proposed to amend by inserting that plaintiff said in his testimony, "There was no running stream of water, but the damage was done by surface water." His honor declined to allow the amendment, but stated that he was satisfied that it appeared in the evidence there was no running stream, and that the damage complained of was done by surface water, and that this was one of the grounds of the motion of non-suit. He further said that if the fact had been otherwise, he would have

sustained the demurrer; meaning, we suppose, that had it appeared in the complaint that the injury was from surface water, he would have sustained a demurrer.

This being all that occurred below in reference to this question, so far as we know from the "Case," it does not seem that his honor made any distinct ruling upon it. He does not state that his order of non-suit was based on it, he simply says it was one of the grounds of the motion. Nor did he make any positive ruling involving this question upon the demurrer, if there was a demurrer interposed, as to which the "Case" is silent; he only states that had it appeared in the complaint that it was surface water complained of, he would have sustained the demurrer. Under these circumstances and inasmuch as our province is limited in cases at law to the review of rulings below, in order to correct errors of law in such rulings, if any, there being no distinct ruling here below, we do not regard this question as fully before us. What we say, therefore, is not intended as a final adjudication, and conclusive of said question in the future, but is only intended as an examination of respondent's propositions in the argument here, that the non-suit may be sustained on the ground that his honor, seeing that the injury complained of resulted from surface water, ordered the non-suit because in his opinion such an injury was *damnum absque injuria*, and therefore constituting no cause of action.

This question has been oftentimes before the courts in many of the States of this country, and most elaborately discussed therein, yet this is the first time it has ever been raised in this State, so far as we have been able to ascertain. In the different States in which it has been adjudicated, the decisions have by no means been in accord. In some of the States a principle said to have been derived from the civil law has been adopted and applied, to wit, that where lands are adjoining, one with a higher elevation than the other, the natural flow of the surface water of the higher arising from rains, melting snows, or otherwise, cannot be disturbed by the proprietor of either of the lands to the injury of the other. In other words, while the proprietor of the upper lands may draw the surface water on his own lands, as his interests or desires may dictate, so long as he keeps it

within his own lands, yet he has no right to collect it on his own lands and throw it in increased quantity upon the lower adjoining lands to the injury of such lands.   Nor has the owner of the lower lands, by embankments or other artificial means, the right to stop the flow of the surface water from the higher lands, and thus throw it back upon the latter, to the injury of such lands. This seems to be the result of the decisions in Pennsylvania, Iowa, Georgia, and Illinois, and perhaps other States.   *Livingston v. McDonald,* 21 *Ia.,* 160 (89 *A. D.,* 563); *Gilham* v. *Madison R. R. Co.,* 49 *Ill.,* 484; *Kauffman* v. *Griesemer,* 26 *Penn. St.,* 407 (67 *A. D.,* 437); *Martin* v. *Riddle, Ibid.,* 415.

In some of the other States it has been held, in accordance with what is said to be the *rigid* common law, that surface water, like a common enemy, may be fought off by the proprietors of lands adjoining like those suggested above, as the interests of each may require, and without regard to the interests of the other; that the lower land owes no servitude to the higher to discharge the waters falling thereon as in a state of nature, forbidding the owner from erecting mounds, embankments, or ditches to protect himself, though by such means the water is thrown back upon the higher lands with injury—the courts holding in these States that such injury is unactionable, on the ground that action in such cases would interfere with and limit the rightful dominion of ownership.   This seems to be the rule in Massachusetts, New Jersey, New Hampshire, and Wisconsin.   See 9 *Cush.,* 111; 10 *Gray,* 28; 7 *Allen,* 19; 25 *Wis.,* 223; 50 *N. H.,* 439; 2 *Woods,* 886.

In some of the other States a medium principle has been adopted, which makes the right to disturb the natural flow of surface water by the owners of lands situated as above suggested, depend somewhat upon the facts and circumstances of each case ; the right, as a general rule, existing, when there is a necessity for its exercise to the proper enjoyment of the ownership of the property for the protection of which it is exercised, and there is no reasonable way of preventing the injury, and not existing where no such reasonable necessity is present, or where the injury inflicted could have been inexpensively and easily prevented.   See well considered case of *Little Rock &c. Railway Co.* v. *Chapman,* 39

*Ark.*, 478 ; *Raleigh & Augusta Air Line R. R. Co.* v. *Wicker et al.*, 74 *N. C.*, 220 ; and *Barkley* v. *Wilcox*, 86 *N. Y.*, 144. See also *Washb. Ease.* (3d Edit.), 353 *et seq.*

Without going into the argument now as to which of these principles should be adopted in our State, and without announc-ing any final adjudication thereon in this case (the non-suit here-in having been sustained upon another ground, rendering such adjudication unnecessary, even if the question here was distinctly raised in the pleadings and rulings below, which is at least doubt-ful), it is sufficient for us to say, as at present advised and as applicable to respondent's position in support of the non-suit, that we think the medium line referred to above has the strongest foundation, being based as it is upon that great underlying prin-ciple which is the basis of all just laws in reference to the exer-cise of ownership of property, and which alone harmonizes such exercise on the part of each with similar rights in others with whom they may come in contact, to wit, *sic utere tuo ut alienum non laedas*, unless there be some overruling necessity otherwise. Where railroads have been constructed in the different States, they have been regarded as occupying the relation of adjoining lands to such lands as they run through, and the principles here-inabove have been applied, depending upon the ruling doctrine in the State in which the question was raised.

It is the judgment of this court, that the judgment below be affirmed.