LEWIS P. FORE v. THE WESTERN NORTH CAROLINA RAIL-ROAD COMPANY.

*Appeal —Damages—Eminent Domain—Condemnation of Land —Trespass—Evidence.*

1. An appeal will not be dismissed because no entry thereof appears in the record proper, when the case on appeal shows that it was duly taken and perfected.

2. The charter of the Western North Carolina Railroad Company does not give it the right to enter upon (without the consent of the owner) and appropriate a yard, garden or dwelling-house for the purposes of its road ; and when such entry or appropriation is made, the owner may maintain a civil action for the trespass, and is not compelled to resort to the statutory remedy provided for condemnation of lands.

3. Nor will a recovery in such action vest in the corporation any easement or property in the premises.

4. In such action the plaintiff is confined to such damages as may have been done to the *land while in his possession ;* and evidence of extra hazard to the dwelling of plaintiff from fire because of its proximity to the road is not competent. The same rule is applicable to the measure of damages in an assessment under the statutory remedy.

This is a CIVIL ACTION, which was tried before *MacRae, J.*, at June Term, 1888, of BUNCOMBE Superior Court.

The Western North Carolina Railroad Company, formed and organized under an Act of the General Assembly, ratified on the 15th day of February, 1855 (Acts 1854–'55, chap. 228), was invested with "the same powers to condemn all such lands" (needed in the construction of the road) " belonging to individuals or corporations as may be needed for the aforenamed purposes as were granted to and conferred upon the North Carolina Railroad Company by their act of incorporation, and shall proceed to condemn such lands in the same manner and to the same extent under the like rules, restrictions and conditions as are prescribed in the charter aforesaid for the government of the said company," &c.; and, further, that " in the absence of any contract or contracts in relation to lands through which said road may pass, it shall be presumed that the land over which said road may be constructed, together with 100 feet on each side thereof, has been granted by the owner or owners to the company, and the said company shall have good right and title thereto, and shall have, hold and enjoy the same so long as it shall be used for the purposes of said road, and no longer, unless the owner or owners shall apply for an assessment of the value of said lands, as hereinbefore directed, within two years next after that part of said road has been located."

This section (29) has a saving clause in favor of "infants, *femes covert*, persons *non compos* or beyond seas," and that referred to in the charter granted to the North Carolina Railroad Company (Acts 1848–'49, chap. 182, sec. 27), superadds a concluding proviso in these words: "That the right of condemnation herein granted shall not authorize the said company to invade the dwelling-house, yard, garden or burial ground of any individual without his consent."

The defendant company, in the asserted exercise of the power conferred, entered upon plaintiff's land and laid out,

by stakes placed in the central line, in 1878, designating the course of the track, and late in the year 1880 proceeded, by excavation and banking, to level the ground for the laying the cross-ties and iron rails.   In doing this the servants of the company, under an overseer in charge, entered upon and passed through a garden of the plaintiff, near to his dwelling, within thirty feet thereof, and committed the trespasses for the redress of which this action was instituted on the 15th day of August, 1882.

No other proceeding has been brought to obtain compensation from the company for the land thus taken and appropriated to its uses as a railway, and the demand now preferred is for compensation for the damages committed in the alleged trespasses.

There was a verdict for the plaintiff, and from the judgment rendered thereon the defendant appealed.

The other facts necessary to an understanding of the questions presented are stated in the opinion.

*Mr. F. A. Sondley,* for the plaintiff.

*Messrs. D. Schenck, Charles Price* and *C. M. Busbee,* for the defendant.

SMITH, C. J. (after stating the case.)   Upon the call of this case, and before entering upon the trial, the plaintiff moved to dismiss the appeal, because no entry of the appeal was found on the record. But it does appear from the case made up by the Judge, at the close of which are these words: "Rule for new trial.   Rule discharged.   Judgment for plaintiff. Defendant appeals to the Supreme Court.   Notice waived. Bond in $50 adjudged sufficient.   Case settled on disagreement of counsel.   James C. MacRae, Judge S. C."

This is sufficient.   The mere neglect of the Clerk to note an appeal actually taken an prosecuted leaves no ground for

the motion, and it is denied.   We proceed to examine the case on its merits.

There are three several causes of action enumerated in the complaint, of which the first two are abandoned by the entry of a *nolle prosequi*, miscalled in the record a nonsuit, and such issues alone as are raised in the third were submitted to the jury, in response to which they find:

That the plaintiff is the owner of the land; that the defendant did trespass thereon as alleged in the complaint; that the defendant has acquired no easement on the land; that his action is not barred by the Statute of Limitations, and that his damages, by reason of the trespasses charged, are $400.

This is not the special proceeding provided for in the act which must be pursued by the owner to obtain satisfaction for the right of way over his land acquired by the company, which must be resorted to within two years from the *location* of the road, according to the provision in the defendant's charter, or from the completion or finishing of the road on said land, according to the charter of the North Carolina Railroad Company, or be lost by delay.   If the plaintiff had voluntarily surrendered his land to the defendant for railroad purposes he would be concluded and deprived of all remedy.   But this he did not do.   On the contrary, availing himself of his right to resist this attempted appropriation of his garden and yard, which the statute gave no right to the company to enter upon and take, the plaintiff placed a fence across the projected line of road, and when the work began in October, 1880, or later, the defendant's agent overseeing and in charge of the convict laborers was informed by the plaintiff's son that the plaintiff forbade his going there.

This prohibition being disregarded and the work being pushed, the plaintiff, at the term stated, began his suit for damages.

101—34

The action, then, was properly instituted, for the company had no authority " to invade the dwelling-house, yard or garden," and could lawfully take it only with his consent, and this consent was not given.

The result of the suit is not to transfer any easement or property in the land to the defendant, but to remunerate the plaintiff for the injury sustained by the land in consequence of the defendant's illegal entry thereon and wrongful acts done upon the premises in the construction of the road. A witness introduced by the plaintiff (for no testimony came from the defendant) testified, after objection made and overruled, that the damages were, in his judgment, about $400, and he proceeded thus to give the grounds of his estimate:

The plaintiff " had a first-class garden, which was destroyed. The lower part of the yard was dug up, leaving a ditch in it. The plaintiff moved his stables beyond his house for fear of fire. They removed fruit trees, garden herbs, &c., and cut off his outlet, the only road he had to get out from his house. They took his fences out of the way. Witness does not know what became of them. The house was very near, and might take fire from the train."

The defendant objected to the statements of the witness as to the nearness of the house and danger of fire, on the ground that this is not a proper element of damage in this action. The objection was overruled, and defendant excepted.

We think there was error in permitting this hazard to be proved and considered by the jury in assessing the damages. It evidently entered into the witness's estimate as given to the jury, and may have influenced the jury in arriving at the same estimate as the witness. The action is for *trespasses upon the land* and the injury done to it as property, and cannot include dangers arising from the running of trains, though in close proximity to the plaintiff's dwelling—dangers which, if they existed, never led in fact to any loss or detriment to the plaintiff.

If the land had been lawfully appropriated under the statute, the damages compensatory therefor could not be increased by perils incident to the running of trains, because if such happen from the want of care and attention on the part of employees, they may be recovered in a separate suit; and if not, compensation is allowed, not for perils, but for injuries to property. *R. & A. A.-L. R. R. Co.* v. *Wicker*, 74 N. C., 220–229.

It is equally true that the same rule applies to a claim for damages by reason of an unlawful invasion of the plaintiff's land. *Lance* v. *Railroad*, 5 En. & Am., 620; *Railroad* v. *Lazaine*, 28 Penn. St., 203; *Rodmacher* v. *Railroad*, 41 Iowa, 297, cases cited in brief of defendant's counsel.

For injuries sustained after the defendant acquired possession no recovery could be had until the plaintiff had regained possession, for the gravamen of the complaint is for an injury to the possession. *London* v. *Bear*, 84 N. C., 266. The other assigned errors seem to grow out of the confounding the action for trespass with the special proceeding for damages sustained by the taking and appropriating property for the use of a railway; in other words, the value of the acquired easement. We do not pass upon them, as it is unnecessary to do so. For the error assigned, the verdict must be set aside and a *venire de novo* awarded.

Error.