WATER & IMP. CO. *v.* GILDERSLEEVE *et al.*

(*Supreme Court of New Mexico.* January, 1888.)

**1.** CONTRIBUTORY NEGLIGENCE—EVIDENCE—VERDICT.
Where the means of shutting off water from a private dwelling were solely in the hands of defendant water company, plaintiff, the consumer, had a right to rely on a notice that, unless his license was renewed, the water would be cut off in three days, and his failure thereafter to protect his pipes from freezing was not such negligence as would require a verdict in his favor for damages caused by the bursting of a water-pipe to be set aside.

**2.** PRACTICE—MOTIONS IN ARREST AND FOR NEW TRIAL—PRESUMPTION.
Motions for new trial and in arrest of judgment being made and acted on the same day, it will be presumed that they were in proper order.

Appeal from district court, Santa Fe county.

Action by Charles H. Gildersleeve and others against the Water & Improvement Company to recover damages caused by the bursting of a water-pipe. Trial to the court below, and judgment for plaintiffs. Defendant appealed.

REEVES, J. This suit was brought by the appellees to recover damages done to their house and furniture from the bursting of a water-pipe leading from a pipe or water-main in the street into the kitchen in the house of the appellees. By agreement of the parties plaintiff and defendant, the cause was tried by the court, without the intervention of a jury. The court, after hearing the evidence and arguments of counsel, found the defendant guilty, and assessed the damages of the plaintiffs at $395.

In the statement of the case, as found in the brief of counsel for the plaintiffs in the court below and the appellees in this court, it is objected that the defendant in the lower court, (appellant in this court,) before moving for a new trial, moved in arrest of judgment, and thereby waived the right to move for a new trial. There are two recitals in the record. In the first recital it appears that the defendant gave notice of a motion for a new trial and in arrest of the judgment. In a subsequent part of the transcript of the record, and where the two motions are copied, the motion to arrest the judgment is recited first. A motion for a new trial is first in order, and is proper when a party objects to the admission or rejection of evidence on the trial of the case.

It may be on the ground that the court misdirected the jury, or that the verdict was contrary to the evidence, or for newly-discovered evidence, and the like. A motion in arrest of judgment is in regard to an error appearing on the face of the record. The statute of this territory provides that motions for new trial and in arrest of judgment may be entertained, without directing the order in which the motions are to be filed, except the mention of the motion for the new trial precedes the mention of the motion in arrest of the judgment in the statutory enactment. Both motions appear to have been made on the same day of the term; and, having been acted on by the court on the same day, the presumption is they were disposed of in proper and legal order. The overruling of the motion in arrest of the judgment could have no other effect than that which would have been the result of overruling a demurrer to the plaintiffs' declaration, if one had been interposed at the proper time. No objection to the declaration has been pointed out; and, perceiving none from an inspection of the record, the court did not err in overruling the motion in arrest.

In the brief of counsel for the appellant it is contended that there was no foundation for the only proof offered as to the damage done the plaintiffs. This objection will be better understood from the following statement of the case and the evidence in support of it: The plaintiffs were the owners of and occupied a house in the city of Santa Fe, in the month of November, 1883. The defendant, a corporation, was at the same time engaged in the business of supplying and conducting water through pipes and mains to the houses of the plaintiffs and others for a consideration agreed upon. The plaintiffs had paid the defendant company in advance for the use of the water up to November 19, 1883. On that day the plaintiffs were notified by the company, by a postal card through the mail, that their license for the use of the water expired on the same day, (November 19, 1883,) and that the water would be shut off in three days from the expiration of their license if not renewed. There was a pipe belonging to the plaintiffs connecting with the main pipe, and running under the ground into the plaintiffs' kitchen. The main pipe belonging to the company ran along the public street underground, passing in front of the plaintiffs' residence. The two pipes were connected in the street, and the only place of turning the water off was at the point of connection in the street. The connection was secured by means of a key or wrench in the possession of the water company. On one occasion the plaintiff Charles H. Gildersleeve requested to have a key, which the company refused him, stating that it would be against their rules to comply with the request. The family of the plaintiff Charles H. Gildersleeve being absent from home, he did not renew his license for the use of the water at that time, and there is no evidence that he did use it before the bursting of the pipe, and after he received notice from the company, (as will be hereafter more fully referred to.) He further testified that he relied on the notice from the company that the water would be shut off, unless he renewed his water license, and not having renewed his license he supposed that the company had cut off the water from his pipe. But in the month of December, 1883, he discovered that the pipe in his kitchen had burst, and the water from the pipe was being thrown in large quantities against the walls and over the floors, damaging his kitchen and dining rooms, carpets, and furniture, making it necessary to expend considerable sums of money in making repairs.

The *first* ground of the motion for a new trial is: The court erred in refusing to find a verdict for the defendant in said cause upon the motion of the said defendant, made at the close of the evidence and testimony offered by the said plaintiffs upon the trial of said cause. *Second.* The verdict in said cause is contrary to the law governing said case. *Third.* The said verdict is contrary to the evidence offered and given in said cause, and to the weight of the evidence offered and given in said cause. *Fourth.* There was no evidence

to warrant or support the said verdict. *Fifth.* The court erred in admitting and considering, over the objection of the said defendant, improper evidence and testimony in said cause, in behalf of the said plaintiff. *Sixth.* The court erred in refusing to permit and consider legal evidence offered by and on behalf of the said defendant in said cause. *Seventh.* The damages found in and by the said verdict were and are excessive. The court overruled the motion, and the defendant excepted and has appealed to this court.

The first specification of error in the brief of appellant is that proof was allowed as to the prospective rent of the property. The proof shows that the property was in good condition, and with the furniture a fair rental value was $50 per month, and without the furniture the rental value of the house was $30 or $35 per month. The witness says parties were in communication with him about the time the property was injured, and were coming to the house nearly every day to examine it with a view of renting; but after this injury he was unable to rent the house for three or four months, and that the rooms could not be repaired until the season became warm, it then being cold weather. It is not shown that the rental value of the house formed any part of the sum allowed by the court in the judgment. Be that as it may, the ruling of the court is not made one of the grounds of the motion for a new trial, but is only referred to in the brief of appellant's counsel, and will not be further considered.

It is further objected by appellant that there was no proof when the water was to be shut off. The evidence shows that Gildersleeve received notice from the defendant by a postal card bearing date November 19, 1883, that the water would be cut off in three days from expiration of his license, if not renewed. Acting on that notice, Gildersleeve testified on the trial that he supposed the water had been shut off from his house on the tenth day of December, and there was no conflicting evidence. It is said by counsel for appellant in their brief that a rule of the company required consumers to keep the pipes from being frozen, but that the court would not allow it in evidence. The plaintiff testified that he had no knowledge or notice of the regulations of the company, and on that ground the court properly excluded such evidence. The reason for the exclusion is not shown, and not assigned as error, unless it was intended to be included without being specified in some one of the grounds above mentioned.

Were the damages found by the verdict in this case excessive? Damages are assessed by the jury, or by the court sitting without a jury, under the rules of law and evidence. The court is the judge of the law of the case, and the jury judges of the weight of the evidence, under the instruction of the court, and subject to its final action on a motion for a new trial. The plaintiffs' claim to damages was based on alleged injury to their house and its contents. During the progress of the trial they introduced the plaintiff Charles H. Gildersleeve as a witness to prove the extent of the injuries, and the costs of repairing. To the introduction of such evidence it was objected by the defendant that he was entitled to the items or a statement of the exact amount. The objection would apply to an account containing separate items of different dates with greater force than to a claim for damages arising out of a tort. The plaintiffs' declaration shows that the damage complained of was done to the plaintiffs' house, carpets, furniture, etc. The action of the court in overruling the objection is not specified in the motion for a new trial, or referred to in the brief of counsel for appellant, and no authority is cited in support of the objection, and it is passed without further notice. The amounts paid out by Gildersleeve for repairs and other expenses in and about the premises, apparently necessary as growing out of the injuries to the property, were not less than the damages assessed by the court. The damages estimated by the witness Donahue was not less than $550 for the mason work. *Tillotson* v. *Cheetham,* 2 Johns. 74; *Clark* v. *Binney,* 2 Pick. 113.

The last ground of the motion for a new trial is as follows: "Wherever there is negligence on the part of the plaintiff contributing directly or as a proximate cause to the injury, or whenever he might, by the exercise of ordinary care, have avoided the injury, he cannot recover." This proposition is admitted in the brief of counsel for the appellees; but they contend that the facts do not show that the appellees were guilty of any negligence, or that they failed to do or perform any act that it was incumbent on them to do or perform. The briefs of counsel for the respective parties, plaintiffs and defendant, contain a fair summary of the evidence in the case. The counsel of the appellant in his brief insists that the pipe from the bursting of which damages resulted belonged to the plaintiffs, and was in their building and exclusive control; that the plaintiff made no effort to prevent the pipe from freezing, though it was in his house, where he slept; and that the accident was about a month or two after the notice to renew the license; that the pipe was in an exposed situation, liable to freeze, and that the plaintiff had notice of the water being frozen for a week before the accident. It is further charged that it was a part of the plaintiffs' case to establish not only that the injury was the result of the defendant's negligence, but that the plaintiffs' negligence did not contribute to the injury. For the appellees it is contended by counsel in their brief that the appellees, acting upon the notice that the water would be cut off in three days unless the license was renewed, had the right to assume that the water had been shut off, and all connection between their premises and the water in the pipes of appellant severed; and if this had been done the water could not have flooded the house of the appellees; that appellant had within its power the means to shut off the water, while the appellees had not, and, failing to sever the connection, it was in the wrong and liable in damages to the plaintiff. A different question would be presented if the company had notified Gildersleeve to sever the connection between his premises and the pipe belonging to the company in the street by removing his own pipe, instead of the notice that the company would shut off the water unless he renewed his license. If such notice had been given, and Gildersleeve had applied for the key or wrench to disconnect the pipes, and the company had refused to comply with the request, and failed to separate the pipes, it would have been liable in damages for any injury that might have resulted from that cause to Gildersleeve, he not being in fault. Or, if the company had complied with the request made by Gildersleeve, but he had neglected to use the key, and damage had resulted to him from that cause, he could not have taken advantage of his own wrong, as it would be in such a case, and hold the company liable for it. It was shown on the trial that no water was used about the house of Gildersleeve from this pipe from August, 1883, or at least a month previous to the receipt of the company's notice, until he renewed his water license with the company in July, 1884. The bursting of the water-pipe occurred in the month of December, 1883. A witness testified on the trial that the water-pipe was frozen about a week, or within a week before it burst, but that Gildersleeve said that he thought the water was turned off, as the witness also thought. This witness tried the faucet, to see if the water would run, but got only a few drops of water, and for that reason, and because other pipes had frozen up, she told Mr. Gildersleeve that it was frozen. The water in the pipe could not be turned off by means of the faucet in the house, if it had been known to appellee that the pipe had water in it; that was done by means of the key or wrench at the point of connection in the street, and the wrench was in the possession of the water company or under its control.

It appears from the evidence that the plaintiffs did not renew their license for the use of the water until the month of July, 1884, and that they paid no water license from November, 1883, to July, 1884. In view of these facts, the appellees assumed that the water had been cut off by appellant, and, that being the case, they took no steps to prevent the pipe from freezing. It

further appears that the appellees did not know the exact place of the connection of the pipes in the street, being under ground several feet.

There is great diversity of opinion whether contributive negligence is a question of fact for the jury or a question of law for the court. In Massachusetts it is held to be a question of law. *Harvey* v. *Railroad Co.*, 116 Mass. 269. In Pennsylvania the court held that it was a question for the jury. *Johnson* v. *Railroad Co.*, 70 Pa. St. 357. In the case at bar the judge passed on the law as well as the facts, a jury being waived; and the capacity in which he acted on the question of negligence is not material. To set aside a verdict it is not sufficient that a jury, or a court sitting without a jury, might have found a different verdict, but it must appear that the verdict rendered was wrong and unsupported by the evidence.

The case seems to have been duly considered by the court below, doubtless on able argument of counsel there; and after like argument of counsel here and due deliberation by the court, the judgment is affirmed.

We concur: BRINKER, J.; HENDERSON, J.