NEW-YORK,
Nov. 1806.

## Tillotson *against* Cheetham.

Tillotson
v
Cheetham.

*A writ of inquiry of damages, may be executed before a sworn deputy of the sheriff. The court will not set aside the assessment of damages on a writ of inqui-ry, in an action of slan-der, on the ground that such damages are excessive, unless they appear to be very enormous and outrage-ously excess-ive.*

A MOTION was made on the part of the defendant, to set aside the *inquisition*, taken on the writ of inquiry in this case. The writ was executed before a deputy sher- iff in the city of *Albany*, and the damages assessed at $1400. The grounds of application were, for *irregular- ity*; and for *excessive damages*; a motion was also made that an inquest should be taken before one of the judges of this court. The affidavits stated, that no evidence was offered to the jury on the inquest, except the news- paper, containing the supposed libel, and that the testi- mony of witnesses attending to be examined in mittiga- tion of damages, was rejected by the deputy sheriff who presided; that part of the publication declared upon, was not libellous, and that, in other parts of the same, the *inuendoes* are not warranted by the supposed libel; notwithstanding which, the jury, on the inquest, assessed damages for the whole. The affidavit of the defendant also stated, that he verily believed, that he could not ob- tain a fair and impartial hearing and trial, before a jury summoned by the present sheriff of the city and county of *Albany*, and that the sheriff of the said city and coun- ty did not preside, and was not present at the execution of the said writ; but that a deputy, of the name of *Winne*, presided. An affidavit of one of the counsel for the de- fendant, also stated, that he was present at the hearing of the cause before the deputy sheriff; that no testimony whatever was offered on the part of the plaintiff, ex- cept the newspaper, said to [*]contain the alleged libel, and that all the testimony offered on the part of the de- fendant was rejected by the *deputy sheriff* who presided.

[ *64 ]

The *declaration* set forth that the plaintiff, at the time of the publication of the libel, was *secretary of the state*, and that the defendant, to bring him into disgrace, and to cause him to lose his office, and to cause it to be be- lieved that the plaintiff had enlisted himself in the ser-

vice of the merchants' bank, and had intrigued with, and allured many of the legislature from their duty, to vote for the incorporation of that bank, which the defendant stated to have been obtained by means of bribery and corruption, &c. did, on the 3d day of *July*, 1805, in a paper called the *Republican Watch-Tower*, falsely and maliciously print and publish a libel of and concerning the plaintiff, containing amongst other things, the false, scandalous, and malicious matter following, viz. " it was of some moment to enlist in the service of the bank, the secretary, (meaning the plaintiff) and the treasurer of the state; and to those to whom these personages (meaning the plaintiff and treasurer) were known, the object could not appear of difficult attainment. In one respect, however, they (meaning the plaintiff and treasurer,) were alike essential to the honourable purpose of Mr. *M.* Residing at the seat of government, the thorough-fare of the state, the *focus* of every political intrigue, and the attraction of every political want, they (meaning the plaintiff and treasurer) are frequently visited by our law-makers; and, all things considered, they (meaning the plaintiff and treasurer) have abundant opportunities and means of diverting them from the point of duty. Succeeding in alluring these gentlemen (meaning the plaintiff and treasurer) in the scheme of the direction, it were unnecessary and had been inexpedient for Mr. *M.* to go further than *Albany*. Many of these objects might be much better accomplished by these illustrious agents; (meaning the plaintiff and treasurer) a knowledge of the characters of these gentlemen, [*](meaning the plaintiff and treasurer) would render approach easy, and success certain. In one respect, they (meaning the plaintiff and treasurer) are similar. They (meaning the plaintiff and treasurer) are avaricious to a fault; money outweighs with them (meaning the plaintiff and treasurer) many honourable considerations, and yet

NEW-YORK,
Nov. 1806.

Tillotson
v.
Cheetham.

[ * 65 ]

NEW-YORK,
Nov. 1806.

Tillotson
v.
Cheetham.

they (meaning the plaintiff and treasurer) may not, in this transaction, directly or indirectly, have fingered any. I trust they (meaning the plaintiff and treasurer) have not ; and I do not complain that they (meaning the plaintiff and treasurer) have ; but as officers of government, they (meaning the plaintiff and treasurer) have acted improperly. Their conduct (meaning the conduct of the plaintiff and treasurer) is extremely reprehensible. The public will judge of the inducement ; perhaps, at this period, they (meaning the plaintiff and treasurer) did not speculate in the stock, which was at 95." And in another part of the said newspaper, among other things, the libellous matter following, of and concerning the plaintiff, viz. " while corruption was thus diffusing itself through the veins and arteries of, the political body, the republican party, relying implicitly on the fidelity of their representatives, were unapprehensive. After the decisions of the legislature, and after these decisions had been confirmed by a warmly contested election, foreign invasion was more distant from their thoughts, than the incorporation of the hostile bank. Almost every republican, who was originally a stockholder, had sold out. None but the bribers and the bribed contemplated the incorporation," (meaning that the plaintiff had been guilty of bribery and corruption, in obtaining the incorporation of the said bank.) By means whereof, &c.

*Foot*, for the defendant. As to their regularity; the writ of inquiry was executed before a deputy. The authority of a sheriff is judicial or ministerial. When the sheriff executes his judicial authority, he must do it in [*]person ; it cannot be done by an under sheriff or deputy. Thus, in executing a writ of inquiry, of waste, of damages in dower, of admeasurement of pasture, &c. the sheriff is said to act judicially, and those acts cannot be done by deputy.* An under sheriff in *England*, differs from an under sheriff here.† Again, the plaintiff did not prove that the defendant was author of the pub-

[* 66 ]
* 6 *Comyn's*
*Digest*, *Viscount C.* 1. p.
414. 19 *Vi. ner, Tit. Sheriff*, D. § 3.
† *Blac. Ab. Sheriff*, H. 1.
*Impey's office of sheriff*, 45, 56.

lication. The only evidence offered was the paper itself; and there were not sufficient averments in the declaration to entitle the plaintiff to give it in evidence.‡ In the case of *Billers* and *Knight* v. *Bowles*,§ an inquisition was set aside, because the promissory note on which the suit was brought was not produced, and the note and indorsement proved. The words in the declaration do not come within the definition of a libel ;¶ nor are there sufficient averments to make them applicable to the plaintiff. 2. If the words are not actionable, or are such as could produce no injury to the plaintiff, the damages are excesstive ; and to determine this point, the court must look at the declaration.* The power of the court to direct the inquisition to be taken before a judge at a circuit, is unquestionable ;† and the affidavit discloses sufficient reasons to induce the court to exercise that power.

*Woodworth*, attorney general, and *Henry* contra. In England the sheriff has certain judicial powers not known to our laws. The distinction between the judicial and ministerial powers of a sheriff does not exist here. The sheriff can hold no court ; he can pronounce no judgment ; he has no judicial power, in the sense of the English law, in relation to that officer. It is not denied that a judicial power cannot be delegated. The acts of the sheriff here, though they may require the exercise of some judgment and discretion, are ministerial, not judicial. A writ of inquiry of damages is a mere inquest of office, directed to a ministerial officer to be executed, in order to inform the conscience of the court.‡ The cases of *Wallace* v. *Humes*,§ and *Denny* v. *Trapnell*,¶ show beyond contradiction, [*]that in *England*, a writ of inquiry of damages may be executed before a deputy sheriff. In the first case, the objection was merely that it could not be done before the deputy of a deputy ; and in the second, that it could not be before two deputies, but in both cases, it was agreed on all hands, that it might be executed before a *deputy* or *under sheriff*. As

NEW-YORK,
Nov. 1806.

Tillotson
v.
Cheetham.

‡ *Cro. Car.* 143. *Slocomb's case.* 4 *Coke,* 17.
§ *Barnes,* 233.
¶ 4 *Comyns,* 715, *Libel A.* 3.

* *Barnes,* 233.

† *Barnes,* 233, 235.

‡ *Bruce* v. *Rawlins,* 3 *Wilson,* 62. *Dalton* 6, 115.
§ *Barnes,* 231
¶ 2 *Wilson,* 378.

[ * 67 ]

* *L. N. Y. v.*
1. *p.* 402.

† 2 *Wils.* 206

‡ 2 *Wils.* 244·
§ 4 *Term* 657.

[ * 68 ]

to a writ of inquiry of dower, that is directed, by an express statute, to be executed by the sheriff, and the writ is his commission. There is no distinction as to power between a sheriff and under sheriff. The oath required is the same.* By appointing a deputy, the sheriff transfers to him all the authority that he has, or can delegate. But without resorting to the authority of judicial determinations, the question might be left to be decided by the invariable, and long established practice as to inquests by deputies, a practice well known to every lawyer, and the propriety of which has never before been questioned. 2. By suffering judgment to go by default, the defendant admitted the paper declared on, to have been published by him. The defendant admits the libel, as fully as if it had been proved; if it were otherwise, a default would not differ from a defence. The right to recover is tacitly conceded by the interlocutory judgment, and the only inquiry is concerning the damages which the plaintiff ought to recover. 3. Are the damages, then, in this case, so excessive or outrageous as to demand the interposition of this court? In actions of *tort*, the law has laid down no certain measure of damages.† It is a matter which must necessarily be left to the decision of a jury. It would be extremely dangerous for courts to intermeddle in such cases. There is not a case to be found, where the court have granted a new trial merely for excessive damages.‡ In the case of *Duberly* v. *Gunning*,§ where the jury gave 5000l. damages, the court would not set aside the verdict, though Ld. *Kenyon* said he should have been satisfied with nominal damages. It must be a most flagrant and outrageous case, indeed, [*]to induce the court to interfere. Are the damages assessed in the present case, disproportionate to the injury complained of by the plaintiff? [Here the counsel went into an examination of the libel, and its design and tendency, and of the grounds which ought and might have influenced the jury in assessing the damages.]

*Williams*, in reply.   It is conceded that a judicial pow-
er cannot be delegated.   If the execution of writs of in-
quiry were a mere ministerial power, it might be dele-
gated and sub-delegated; it might be exercised by the
deputy of a deputy; yet, in *England*, it appears, that the
deputy of a deputy cannot execute a writ of inquiry.—
That this is a judicial power is to be inferred from the
nature of the duties he has to perform.   He must sum-
mon a jury, and decide on their qualifications: he must
decide on the admissibility and pertinency of the evidence
offered before that jury.   To do this, he must examine
into, and decide on the nature of the action, and the re-
levancy of the testimony offered.   He must decide what
is libellous, and what is not libellous; what evidence is
to apply to one part, and what to another; in short, he
must exercise as complete judicial functions as a judge at
*nisi prius.*   The case cited from *Viner** is decisive:  the
court there said that a writ of inquiry of damages in dow-
er could not be executed by a deputy, because it was a
*judicial act.*   Though it is said, that this is directed by a
statute to be done by the sheriff personally, yet the reason
assigned by the court applies to all other writs of inquiry.
*Barnes* is an authority of little weight; his cases are so
contradictory, that they destroy each other.   In *England*
an *under sheriff* may exercise all the authority of a sher-
iff; but he cannot depute another to execute a writ of in-
quiry.   Why not?   Unless it be that it is a judicial pow-
er.   The office of *under sheriff*, created by our statute,†
is to be exercised only in case of the death of the sheriff.
In *England*, the office of under sheriff is of great anti-
quity, and nearly coeval with that of sheriff.   The prac-
tice of executing writs of inquiry [*] before deputies must
be considered as an innovation, and if found improper,
the court will abolish it.   Deputies may be excellent bai-
liffs to serve process, but it is well known that in general
they are wholly incompetent to decide on any question
of law.   2. The power of the court to grant new trials

NEW-YORK.
Nov 1806.

Tilloisan
v.
Cheetham.

* 19 *Vin.* 413

† *Laws N. Y.
vol.* 1. *p.* 206.

[* 69.]

NEW-YORK.
Nov. 1806.

Tillotson
v.
Cheetham.

* 1 Burr. 393
3 Burr. 1846.

for excessive damages is not to be questioned.* It re-mains to be considered whether, in the present case, the damages are not so wholly disproportionate to the injury, as to justify the court in sending the matter to the consideration of another jury. [Here the counsel entered at great length into the discussion of the libel complained of, and endeavoured to show that the greater part, if not the whole of the words stated in the declaration, were not actionable ; and that there was no evidence of malice or falsehood before the jury.] To show that the court would, on suggestion or affidavit, order a writ of inquiry to be executed before a judge at *nisi prius*, he cited *Barnes*, 233, 234, 235.

KENT, Ch. J. delivered the opinion of the court.

The first question arising upon this motion is, whether the writ of inquiry was well executed before the deputy sheriff.

This appeared to me upon the argument to be a novel objection ; for it has been usual to execute writs of inquiry before the deputy, with as little hesitation as before the sheriff. It has been taught us by the best books of practice, that the form of a ticket to a witness, subpœnaed before a jury of inquiry, is to appear before the sheriff or under sheriff. (*Rich. C. B, practice, vol. 1.* 149.) The cases of *Ketle* v. *Bromsell*, *Wallace* v. *Humes*, *Davis* v. *Skillins*, and *Dixon* v. *Goodman*, (*Barnes, p. p.* 230, 231, 232, and 431.) and the case of *Denny* v. *Trapnell*, (3 *Wils.* 378.) are sufficient to place the modern practice and its sanction by the court of C. B. beyond all doubt or contradiction. The counsel for the defendant was not however satisfied with the authority of the practical cases in *Barnes ;* yet those cases are at least conclusive, as historical [*] evidence, to prove the fact that deputy sheriffs in *England*, during the reign of *George* II. did execute writs of inquiry, and that no question was made as to its legality. The case in *Wilson* is as late as the year 1768, and is a correct and high authority ; that case con-

[ * 70 ]

tains the admission of the counsel on each side, that the practice of the court of K. B. was in this particular the same. But some older cases have been alluded to, as intimating a contrary doctrine ; and it was said that the execution of a writ of inquiry was a judicial act, which cannot be delegated. It may therefore be satisfactory to the parties to go further into the subject, and to look more attentively into the foundations upon which our present practice is supported.

The deputy is an officer coeval in point of antiquity with the sheriff, and is recognised in the most ancient statutes. (*W*. 2. 13 *E*. 1. c. 39.) The creation of deputies arose from an impossibility of the sheriff's performing all the duties of his office in person. The powers of the deputy have consequently been ascertained at an early date. The general criterion by which to test his authority is declared in the case of *Levett* v. *Farrar*, (*Cro. Eliz.* 294.) in which the court said, that if a writ be directed to the sheriff by the name of his office, and not by a particular name, and doth not expressly command him to execute it in person, the under sheriff may execute it. He did so in that case, which was a writ upon the statute of *Northampton*, 2 *E*. 3. to remove a force, and *he made inquiry of the force*, and his act was held good. This inquiry was by an inquest taken before him ; it is therefore an authority to show that an under sheriff may preside at a jury of inquiry.

The inquisition is merely an inquest of office, and the act of presiding is ministerial, and not judicial, notwithstanding there are some loose sayings to be gleaned from the books that seem to countenance a contrary opinion. The sheriff gives no judicial decision upon the law, and concluding [*] to a judgment, any more than what might be requisite, in the performance of every ministerial act. The reason given why the jurors cannot be challenged on a writ of inquiry of damages, is, because it is only an inquest of office, and the sheriff does not act as judge.

[* 71 ]

(*Rol. Ab. tit. Trial P.*) Even at the county court, in *England*, the freeholders were considered as the real judges, and the sheriff no more than a ministerial officer, and, consequently, the deputy might preside. (2 *Black. Comm.* 36. 6. *Co.* 11. *Jentleman's case. Stat.* 11. *H.* 7. *c.* 15.) There are numerous cases within the circle of the sheriff's duties, in which these inquests of office are requisite, and in which no doubt has been entertained, that a deputy was competent to summon a jury and take the inquest, although the objection would equally go to every inquest, in every possible case. The *elegit* cannot be executed without the aid of a jury, sworn to appraise the goods, or value and extend the land. (*Cro Eliz.* 584.) The statute of *W.* 2. *c.* 18. which gave the *elegit*, and coupled it with the *fi. fa.* directed, that *vicecomes fieri faciat et liberet*, &c. and yet the deputy may execute the one as well as the other; for, in *Fulwood's* case, (4 *Co.* 65, 6.) it was resolved, that the serjeant at mace might execute the *eleget*, as the personal attendance of the sheriff was not required.

The cases in which the sheriff must personally preside at the inquisition are all *special* cases, in which the writ requires the personal attendance of the sheriff. They are exceptions to the general rule, and demonstrate its existence. Those are the only instances, in respect to process awarded, in which the books speak of the sheriff, as acting as a judge, and in some of them, the expression is, perhaps, used with propriety.

The statute of 13 *E.* 1. *c.* 14. which gave the writ to inquiry of *Waste*, required the personal attendance of the sheriff *vicecomes in propria persona assumptis secum duodecim, &c. accedat ad locum vastatum et inquirat, &c.* and the writ is framed accordingly. (*Reg. Brev. jud.* 25. *b.* 37. *a.*)

[*]So in the writ relating to the inquiry and punishment of *Redisseisin*, the statue of *Merton*, 20. *H.* 3. *c.* 3. directs that the sheriff, *in propria persona accedat ad tenementum, &c. et coram eis per primos juratores et alios legales*

*homines faciat inquisitionem;* and if the disseisin be found, the disseisor is to be taken and committed, and kept in prison, till discharged by fine, or otherwise. This inquisition is, therefore, in the nature of a criminal conviction and judgment, and it is for this reason, I apprehend, that the courts have so often held, that the sheriff acted judicially in the proceedings under the statute of *Merton.* (*See Jentleman's case* and *Fulwood's case, supra,* and *Norton* v. *Simmes, Hob.* 12.) The original writ of *accedas ad curiam,* and the judicial writs of partition, and admeasurement of dower, and of pasture, are all special, and require the sheriff to go in his own proper person and execute them. (*Reg. Brev. orig.* 9. *b. Jud.* 80. *b.* 36. *b.* 38. *a.*) It was resolved, in *Clay's* case, (*Cro. Eliz.* 10.) that in all cases where the words of the writ were, that the sheriff should go in person, he cannot execute it by deputy. It can scarcely be necessary to add, that in general, the writ of inquiry omits the requisition of the personal attendance of the sheriff, and that his attendance in person is not, therefore, essential. (*Reg. Brev.* 37. *b. Bohun's Inst. Leg.* 55.)

*Bandal's* case (*Noy,* 21.) appears, indeed, to advance a contrary doctrine, and to consider the execution of a writ of inquiry of damages, as a judicial act. The case states that *Bandal* brought a writ of dower, and that a writ issued to the sheriff to inquire of the damages; and he made a warrant to a deputy to take the inquest, and two judges were of opinion that it was not good, because, taking the inquest was a judicial act, which the sheriff ought to do in person. In the first place, it is to be observed, that *Noy's Reports* are of no credit; they being, according to Mr. *Hargrave,* only loose notes, compiled from his papers by serjeant *Size,* and imposed upon the world as genuine. But the case itself is solitary and anomalous, and cannot be law. The only dower [*]process which cannot be executed by deputy, is the writ of admeasurement of dower; this writ is *vicontiel,* and not

[ * 73 [

returnable; and the parties may plead to it before the sheriff if they think proper, as he is commanded by it to do right and justice to the parties. (*F. N. B.* 148. 2 *Inst.* 369.) But the writ of inquiry of damages in dower, which the case seems to allude to, and which issues in pursuance of the statute of *Merton*, is a mere inquest of office. It so was considered as early as *Hen. IV.* (*Bro. Inquest*, pl. 17.) and the writ is in the common form, and does not require the sheriff to execute it in person. (*Thes. Brevium*, 139. 2 *Saund.* 45. note 4.)

From this view of the subject, I believe I may safely say, that there is no case in which a writ of inquiry may not be executed by a deputy, except where the statute, or the writ itself, requires the sheriff to attend in his proper person; and that therefore, the first objection taken to the inquisition, in the present case, cannot be supported.

Before I conclude this point, it may be proper to notice, that the affidavits upon which the motion was grounded, state, that the inquest was taken before a *deputy sheriff*. By this we are to understand a general deputy, with powers as extensive as the sheriff can delegate, and who is required to take the general oath of office prescribed by law to be taken by the sheriff. There is an officer known under the name of *under-sheriff* of the county, who is appointed by the special direction of the statute, (Laws, vol. 1. p. 206.) and who is to act as sheriff, in case of the death or inability of his principal. But while the sheriff is in the exercise of his office, this under-sheriff has no more power than any other general deputy; and the statute of 3 *G. I. c.* 15. § 1, 8, 10, 11, from whence our statute was taken, uses the name of under-sheriff, and deputy sheriff, as synonimous, I hold it, therefore, to be perfectly immaterial, in respect to the question before us, whether the inquest was taken before the under-sheriff, strictly so called, or a general deputy. There was no distinction made or known in our law,

between an under-sheriff and a deputy sheriff, until we first adopted the above provision, in the year 1795, and there is no other distinction still but the one created by that statute.

The second ground of the present motion is, the excess of damages. In connexion with this point, it was contended, in support of the motion, that the last *inuendo* stated in the declaration was not good. But upon this motion we are not to take that matter into consideration; and the declaration must be deemed sound and correct. We cannot interfere on account of the damages. A case must be very gross, and the recovery enormous, to justify our interposition on a mere question of damages, in an action of slander. We have no standard by which we can measure the just amount, and ascertain the excess. It is a matter resting in the sound discretion of a jury. The plaintiff, when libelled, was a high and confidential officer of the government; and by the libel he is held out to the world as an object of reproach. He is represented as being seduced into unworthy and dishonourable conduct, by motives equally mean and unworthy. This was a printed defamation, which is regarded in law as the most injurious and aggravated species of slander, because it has a wider circulation, makes a deeper impression, and has a more permanent existence. (*Hardress*, 470. 2 *Show.* 321. 2 *Wils.* 403. 1 *B.* & *Puller*, 332. *Christian's* note to 3 *Blacks.* 8. *n.* 3. *Williams' Saunders*, vol. 1. 248 n. 3.)

The greater mischiefs of written or printed slander, are described by *Perezius*, (*Prælec. in Cod.* lib. 9. tit. 36.) with equal truth and elegance : " *Gravioris injuriæ species est; quæ scripto fit; quia diutius in conspectu hominum perseverat. Vocis enim facile obliviscimur, at litera scripta manet, et per manus moltorum longè lateque vagatur.*"

The court are therefore of opinion, that the defendant take nothing by this motion.

L.            Rule refused.