SOUTHPORT, WILMINGTON AND DURHAM RAILROAD COMPANY
v. OWNERS OF THE PLATT LAND.

(Filed November 3, 1903.)

1. EMINENT DOMAIN—*Damages—Railroads—The Code, secs. 1946, 1945, 1943, 1944—Acts 1891, ch. 176—Acts (Private) 1891, ch. 135, sec. 16—Acts (Private) 1883, ch. 111, sec. 37.*

   In the assessment of land taken for railroad purposes special benefits to the land and not benefits received in common with other property should be considered in reduction of the award for damages.

2. EMINENT DOMAIN—*Damages—Railroads.*

   The finding of commissioners that land taken for railroad purposes received no special benefit is conclusive.

ACTION by the Southport, Wilmington and Durham Railroad Company against the owners of the Platt land near

Southport, heard by Judge *C. M. Cooke,* at March Term, 1903, of the Superior Court of BRUNSWICK County. From a judgment for the defendant the plaintiff appealed.

*Guthrie & Guthrie,* for the plaintiff.
*Russell & Gore* and *Davis & Davis,* for the defendant.

CONNOR, J. This is a proceeding instituted for the purpose of acquiring, by condemnation, thirty-six acres of land belonging to the defendants for the use of the plaintiff for "terminal facilities for the purpose of constructing a proposed railroad," etc. The proceeding was commenced by summons and conducted in all respects in accordance with the provisions of chapter 49, section 1945-46 of The Code. The Commissioners were duly appointed "to appraise, according to law, the value of the land sought to be condemned and the value of the benefit to accrue to the owners of the remainder of the tract of land, from which the land sought to be condemned is to be taken," by the construction and operation of the plaintiff's railroad. Pursuant to the order the Commissioners met on the land and viewed the premises described in the petition and heard the allegations and proofs. They reported to the Court that they had valued the land sought to be condemned at $150 per acre, aggregating $5,700; that they "appraised the value of the benefits to accrue to the remainder of the tract of land from which said thirty-eight acres is taken, at the sum of $——, no value except in common with surrounding lands." Upon the coming in of the report the petitioners filed two exceptions thereto. The Clerk overruled both exceptions and confirmed the report; the petitioners excepted and appealed to the Superior Court in term. Upon the hearing on the appeal the petitioners withdrew the first, and the cause was heard upon the second exception, to-wit: "The petitioner further excepts

RAILROAD CO. *v.* PLATT LAND.

to said report of the commissioners for that they have not appraised any benefits, as they should have done, for benefits to accrue to the remainder of the tract of land from which said thirty-eight acres are taken, and, further, that the commissioners have returned as their finding, as to benefits to accrue to the balance of the tract, that it has no value except in common with surrounding lands, and upon this exception the petitioners demand a jury trial at term time." His Honor overruled the exception and affirmed the judgment of the Clerk, and the petitioners appealed.

The petitioners' contention before his Honor, and in this Court, as set forth in the case on appeal, is that "the commissioners proceeded upon an erroneous view of the law pertaining to the appraisement of benefits in such cases as is provided by the Public Laws of 1901, chapter 160, amendatory of The Code, sec. 1946, chapter 49; that the rule for assessing benefits in such cases, as provided in The Code, sec. 1946, chapter 49, was changed by the Public Laws of 1891, and the appraisers should have allowed such benefits as might accrue to the balance of the tract, whether such benefits were common to adjoining land owners and not peculiar to the Platt lands." For the purpose of deciding the very interesting question presented by the exception and the appeal from his Honor's judgment, it is necessary to review the legislation in this State and the decisions of this Court.

In *Railroad v. Davis,* 19 N. C., 451, it was held that while there was no provision in our Constitution prohibiting the taking of private property for public use without compensation, the principle embodied in such a provision was so salutary to the citizen, and concerned so nearly the character of the State, that it might well be urged that it must be consecrated by its adoption in some part of the free Constitutions of this State. The Court should be reluctant to pronounce judicially their inability to find it in that instrument. If

it be not incorporated therein the omission must be attributed to the belief of the founders of the government that the Legislature would never perpetrate so flagrant an act of gross oppression, or that it would not be tolerated by the people, but be redressed by the next representatives chosen." The Court further says: "It is not deemed probable, and with difficulty conceived to be possible, that the Legislature will at any time take the property of the citizen for public use, without at the same time providing some reasonable method of ascertaining a just compensation, and some certain means of paying it."

*Mr. Justice Rodman* in *Johnson v. Rankin,* 70 N. C., 555, says: "The principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina."

The question presented upon this appeal first came before this Court in the case of *Freedle v. Railroad,* 49 N. C., 89, and it arose upon the construction of the language of the charter of the North Carolina Railroad Company, which is as follows: "In making said valuation the said commissioners shall take into consideration the loss or damage which may accrue to the owner or owners in consequence of the land or the right of way being surrendered, and the benefit or advantage he, she or they may receive from the erection or establishment of the railroad or work, and shall state particularly the value and amount of each, and the excess of loss and damage over and above the advantage and benefit shall form the measure of valuation of the said land or right of way," as to whether "the compensation was subject to a deduction by making an allowance for the general benefits of the road, for instance, increased facilities for getting to market and traveling, increased prosperity of the country, stimulus to industry, more densed population and a consequent appreciation in the value of real estate; or

whether only such benefits should be deducted as were peculiar to the owner of the land, a part of which was taken for the use of the road."

*Pearson, J.,* speaking of the language of the charter, says: "The words of the charter are satisfied by making a deduction for such benefits as are peculiar to the owner of the land, but they are broad enough to take in such benefits as are common to all. This raises a question of construction." After discussing the question the Court proceeds to say: "We are satisfied from 'the reason of the thing,' and from further consideration, that such general benefits and anticipated advantages are too 'contingent, uncertain and remote' to be made the basis of any practical rule, that the commissioners ought not to have taken into their estimate these benefits and advantages, which are common to all, and that the proper construction of the charter confines the deduction to such benefits and advantages as are peculiar to the particular tract of land in each instance."

This principle was approved in *Railroad v. Wicker,* 74 N. C., 220, in which the charter of the Chatham Railroad Company was construed. The language of the charter in that respect being that "the said commissioners shall take into consideration the loss or damage which may accrue to the owner or owners in consequence of the land or right of way being surrendered, and the benefit or advantage he, she or they may receive from the erection or establishment of the railroad or works, and shall state particularly the value and amount of each, and the excess of loss or damage over and above the advantage and benefit shall form the measure of valuation of said land or right of way." *Rodman, J.,* says: "It is an admitted rule that all special grants of special benefits and privileges, whether to corporations or to individuals, contrary to the general law, are to be strictly construed, and will not be enlarged against the public intendment.

All such grants must be interpreted with and in subordination to the general law, unless it clearly appears that the Legislature intended to depart from the general law and to repeal it as respects the particular grantee, and to confer on him popular privileges.    *    *    *    The rule with respect to the assessment of damages to land taken for railroads, upon the point under consideration, is settled in this State, *Freedle v. N. C. R. R. Co.,* 49 N. C., 89, and has been recognized in so many States that it may now be taken as the general law of the United States," citing Cooley Const. Lim., 565, and a number of cases from other States.    The learned Justice then proceeds to say that "the rule as gathered from the cases cited is this: 'The jury shall not deduct from, or set off against, the damages special to the land, a part of which is taken, any benefits arising from the railroad under construction, which are common to the owner and to all other persons in the vicinity, but may deduct or set off any benefits peculiar to the land.    The charter may without violence be interpreted as meaning to express this rule, and, if it does, it is in conformity to the general law."

We must, therefore, take the law as settled in this State prior to 1872, as announced in that case.    The Legislature at its session of 1871-'72, ch. 138 (incorporated into The Code as chapter 49, entitled "Railroads and Telegraph Companies"), provided for the construction of railroads and telegraph companies.    Sections 1943-4-5 prescribe proceedings for the condemnation of land for the use of railroad companies organized under the provisions of the statute.    Section 1946 provides that the commissioners appointed shall meet upon the premises described in the petition, hear proofs and allegations of the parties and reduce the testimony to writing, and shall ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in the property appraised by

them, and *in determining the amount of such compensation they shall not make any allowance or deduction on account of any real or supposed benefits which the parties in interest may derive from the construction of the proposed railroad.* This provision clearly operated to change the rule in respect to the assessment of benefits and to prohibit the assessment of any benefits whatever, allowing the owner full compensation and value for it, without any allowance or deduction for benefits or advantages, whether special and peculiar to the land or common to the other lands in the vicinity.

The General Assembly at its session of 1891 (Laws 1891, ch. 160), amended the said law as follows: "That section 1946 of The Code be and the same is hereby amended by striking out all after the word "them" in line 21 of said section, down to and including the word "railroad" in line 24; provided, however, that in case the benefits to the land caused by the erection of such railroad be ascertained to exceed the damages to said land, then the railroad company shall pay the cost of the proceeding, and shall not have a judgment for the excess of benefits over damages." Section 1946, as thus amended, makes it the duty of the commissioners "to ascertain and determine the compensation which ought justly to be made by the company to the party or parties owning or interested in the real estate appraised by them." Referring to the several railroad charters in this State, we find that the language used in the charter of the Wilmington and Raleigh Railroad Company is that "the jury shall consider what damages the owners of the land shall have sustained."

The amendment of the act of 1871-'72, chapter 49 of The Code, restores the rule laid down by this Court in Freedle's case and in Wicker's case, *supra,* and his Honor's ruling was in accordance therewith.

Counsel for the petitioners concede that prior to the passage of the act of 1891, save for the provisions of The Code,

this was the law, and his Honor's ruling was in accordance therewith, contending, however, that the amendment of 1891 authorizes the assessment of common benefits in addition to special benefits. Mr. Lewis, in his work on Eminent Domain, in the classification of the States holding the several views upon the manner of assessing benefits in condemnation proceedings, places North Carolina with those holding that special benefits only may be set off against both the value of the property taken and damages to the remainder, including in this class the courts of Connecticut, Kansas, Maine, Minnesota, Massachusetts, Missouri, New Hampshire, New Jersey, Pennsylvania and Vermont.

The law being thus settled in North Carolina prior to the act of 1871-'72, we must construe the amendment of 1891 as restoring the law as announced prior thereto, the rule being as we have heretofore shown. The purpose of the act of 1871-'72 was clearly to prohibit the assessment of any "real or supposed benefits." This being stricken from the act makes it the duty of the commissioners to assess to the land owner "just compensation," and this language has frequently been construed to mean "the value of the land subject to such special benefits as may accrue to the remainder of the tract." This view is strengthened by the opinion in *Miller v. Asheville*, 112 N. C., 759. Section 37 of the Private Laws 1883, ch. 111, provides that for the purpose of opening and widening streets in the city of Asheville, proceedings for condemnation may be instituted and a jury appointed, who shall view the premises and assess the damages which shall be sustained by the opening or widening of the street, and also take into consideration "any special benefit, advantage or enhanced value which may, in their judgment, accrue to any premises," etc. By the Private Acts 1891, ch. 135, sec. 16, this language was so amended that it became the duty of the jury to consider "all benefits special to said land,

and also all benefits, whether real or supposed, which the parties may derive from the construction of said improvments, whether it be common to other lands or only special to their own." This latter act was passed after the institution of the proceedings for the condemnation in Miller's case. His Honor, upon the theory that the act of 1883 controlled, charged the jury that the benefits assessed must be only those "which are special to the owner and not such as he shares in common with other persons." This Court, speaking through *Mr. Justice Clark,* said: "The rule laid down by his Honor has been the settled ruling of this Court, but it was expressly altered as to all condemnation proceedings instituted in behalf of the defendant by section 16, chapter 135, Private Acts of 1891"—the Court holding that the latter act applied. We have examined with some care the decisions of other courts, and while not necessary to sustain the unanswerable reasoning of *Pearson, J.,* in Freedle's case, *supra,* we think they fully sustain the doctrine, as held by this Court, that, in the absence of any express language to the contrary, only special benefits can be deducted from the compensation or damages assessed against the corporation. This rule seems to us eminently just and in accordance with the rule for the construction of statutes providing for proceedings to condemn private property under the right of eminent domain. While this Court will always give a fair and reasonable construction to statutes, it will not lose sight of the well-settled principle that all statutes in derogation of common right are to be strictly construed and for the protection of the citizen, not abridging the essential right of eminent domain, but confining it to limits which the Elders, in their jealous regard for the rights of private property, have laid down. We may not, listening to suggestions of the public necessity, forget that the most permanent and the wisest institutions of government are designed for the protection of private property and per-

sonal liberty. A citizen must surrender his private property in obedience to the necessities of a growing and progressive State, but in doing so he is entitled to be paid full, fair and ample compensation, to be reduced only by such benefits as are special and peculiar to his land. He has the right to have and enjoy the general benefits which are common to him and to his neighbors, without being required to pay therefor because it so happens that the use of his land is necessary for the needs of the public.

The petitioners contend, however, that, as the land taken was for a depot and terminal facilities, necessarily the land which remained to the owners must have received some special benefit. However this may be, the finding of the commissioners is conclusive.

We do not understand that the suggestion contained in the exception, that the petitioners demanded a jury trial, was pressed. In the assignment of error the petitioners suggest only that the commissioners adopted an erroneous rule of law, and there is no assignment of error in this Court in regard to a trial by jury. We therefore do not pass upon it.

The judgment should be

Affirmed.