## J. C. LANIER ET AL. v. THE TOWN OF GREENVILLE.

(Filed 17 October, 1917.)

1. **Jury Drawing—County Commissions—Sheriff, etc.—Challenge to Panel
   —Statutes.**

   Revisal, section 1963, providing for the drawing of a jury by the sheriff,.
   clerk of the board of county commissioners, and two justices of the peace
   contemplates this to be done on the failure of the county commissioners
   to draw the jury for the term of court at least twenty days before its
   commencement, under Revisal, section 1959; and were it otherwise, and
   a jury were drawn within twenty days before the term commenced (sec-
   tion 1963), the statute would be regarded as directory; and where the
   parties have not been prejudiced, the irregularity would not entitle the
   party to disregard the verdict upon challenge to the panel.

2. **Same—Deputy Sheriffs—Ministerial Duties—Prejudice—Irregularities.**

   The provision of the Revisal, section 1963, that the "sheriff," etc., in the
   "presence of and assisted by two justices of the peace of the county, shall
   draw such jury in the manner above described," refers to sheriffs in the
   generic sense, including deputies within its meaning to perform a duty of
   a ministerial nature in the sheriff's name; and where the deputy thus
   acts at the request of the sheriff, a challenge to the panel on that account
   alone will not be sustained.

3. **Condemnation—Municipal Corporations—Cities and Towns—Measure of
   Damages.**

   The damages recoverable by the owner for his lands taken under con-
   demnation by a city for the widening and improvement of its streets is
   the difference in value of his land before and after the taking, less the
   special benefits derived from the increased value by reason of the improve-
   ment, but not such as are enjoyed in common with others.

BROWN, J., dissenting; WALKER, J., concurring in the dissenting opinion.

APPEAL by defendant from *Harding, J.,* at the May Term, 1917, of
PITT.

This is an action brought by the plaintiffs against the defendant for
the recovery of damages alleged to have been sustained by them on
account of the taking by the town of Greenville, for the purpose of
widening Pitt Street, of a strip of land belonging to them, which the
jury found to be 85 feet by 8 8-10 feet wide at one end and 10 6-10 feet
wide on the other end.

Prior to the widening of Pitt Street, said street was a narrow alley, undrained, very little traveled, except in case of absolute necessity, and, as one witness expressed it, "a mud hole from beginning to end." On one side thereof was a high board fence, with cedar trees on the part of the street opposite plaintiffs' property, and with no sidewalks whatever. The street in question leads directly from Dickinson Avenue, the main thoroughfare of Greenville, to the river bridge.

The board of aldermen, pursuant to powers vested in it by the charter of the town of Greenville, found it necessary, in order to render said street safe for traffic, and in order to promote the interests of the traveling public coming from the north side of the river, to widen, drain, improve and pave said street and lay thereon concrete sidewalks; and pursuant to resolutions duly passed by the board of aldermen, the said street was widened and drained and asphalt pavement was laid thereon and concrete sidewalks built, by reason of which the plaintiffs brought this action, claiming that they had been damaged in the sum of $1,000, at the same time admitting the power of the board, under the charter of the town of Greenville, to appropriate and use said property for public purposes; the defendant, on the contrary, contending that by reason of the building of said sidewalks and the widening and draining of said street, the plaintiffs' property had been greatly and peculiarly benefited and its value enhanced in excess of any damage that they had sustained.

When the case was called the defendant stated that it was ready for trial, but that there had been no proper jury summoned to try the case, and entered a challenge to the array, upon the following grounds, to wit:

For that the said jury had not been drawn by the commissioners pursuant to section 1959 of the Revisal of 1905, providing that the jury shall be drawn at least twenty days before each term, and for that said jury had been attempted to be drawn pursuant to section 1963 by a deputy sheriff, the register of deeds, and two justices of the peace, on 12 May, 1917, within less than twenty days before the beginning of the May Term of said court, said court having begun on 21st May, and for said reasons the said challenge to the array was entered.

His Honor denied said challenge, and the defendant excepted, and his Honor found the following facts:

That J. C. Gaskins is register of deeds of Pitt County and clerk to the board of county commissioners; that the jury was drawn on 12 May, 1917; that the said register of deeds, after the board of county commissioners had failed to draw the jury and the board of county commissioners had adjourned and gone to their homes, said register of deeds and clerk to the board of county commissioners of Pitt County, notified the sheriff that it would be necessary for the sheriff and register of deeds and two justices of the peace to draw the jury, as the board

of county commissioners had failed to do so; thereupon the sheriff told his deputy, J. L. Taylor, to attend and assist at the drawing of the jury; that J. L. Taylor is deputy sheriff, J. C. Gaskins is register of deeds and clerk of the board of county commissioners; that B. F. Tyson is a justice of the peace, and that J. T. Smith is justice of the peace; that said Gaskins, register of deeds, J. L. Taylor, deputy sheriff, B. F. Tyson, justice of the peace, and J. T. Smith, justice of the peace, were present in the office of the register of deeds and drew the jury for this term of court in the usual way; that is to say, having a boy under 10 years of age to draw the names of the jurors in Box No. 1; that the jurors were drawn by a boy under 10 years old, and all jurors thus drawn are competent jurors, unless the method of drawing them makes them incompetent as matter of law. The jurors were drawn from Box No. 1, and slips of paper upon which names were written, after being drawn out and copied as jurors, were placed in Box No. 2.

The sheriff and justices of the peace made no formal return to the register of deeds of what they had done in drawing the said names, and that the register of deeds gave a list of the jurors thus drawn, with the usual order to summon sixteen jurors, to the sheriff, and that the register of deeds issued no formal written order for the justices of the peace and the sheriff to meet for the drawing of the jury, but called them over the telephone, and they did actually appear as above set out in response to the call of the register of deeds.

There were several exceptions to the refusal to give several prayers for instructions, all of which relate to the principle in the following prayer for instruction, which was refused:

"If you find by the greater weight of the evidence that the plaintiffs were the owners of the strip of land alleged to have been taken by the defendant, then I charge you that the damages that the plaintiff are entitled to recover would be the actual value of the land taken at the time of its taking, and in assessing these damages it would be your duty to take into consideration the value of the plaintiffs' property immediately before the taking and immediately after the taking, taking into consideration any enhancement in value of the plaintiffs' property by reason of the improvements which the defendant alleges that it made in widening Pitt Street. If the improvement has increased the value of plaintiffs' property, and you find that the plaintiffs' property has been benefited more than damaged, then the plaintiffs would not be entitled to recover anything, and it would be your duty to answer the issue as to damages 'Nothing'; or if you find that the benefits which the plaintiffs have received—if you find that they have received any— equalize the damage which they have suffered, that is to say, that the benefits accruing to the plaintiffs by reason of the improvements made

by the defendant in widening the street are equal to the damages you find that plaintiffs suffered—if you find they suffered any—then it would be your duty to answer the issue as to damages 'Nothing.' "

His Honor charged the jury as to the measure of damages as follows:

"The measure of damages in this particular case is the difference between the reasonable market value of this lot of Lanier's before this strip of land was taken and the reasonable market value of this lot immediately after it was taken, and the difference between the two would be the measure of the damages, that is, whatever you may find that to be, less such peculiar benefits and advantages as have accrued to the land in controversy not common to all other people who live on that street which it improved. It does not mean that because one man has special benefits and two or three others, or all others, have special benefits—it must be some special benefit, some special advantage that is not common and peculiar to every other land or property along the street."

The defendant excepted.

The jury returned a verdict assessing the plaintiffs' damages at $750, and the defendant appealed from the judgment rendered thereon.

*D. M. Clark and J. Conrad Lanier, Jr., for plaintiff.*
*Albion Dunn for defendant.*

ALLEN, J. The defendant does not allege that there was any corruption or intentional misconduct in the drawing of the jury, or that anything was done prejudicial to the development of its defense. On the contrary, the defendant announced its readiness for trial, and, so far as the record shows, the trial was had before an impartial jury, satisfactory to the defendant. We may, then, deal with the legal questions raised by the challenge to the array, uninfluenced by other considerations, and they involve a construction of section 1963 of the Revisal, which reads as follows:

"If the commissioners for any cause fail to draw a jury for any term of the Superior Court, regular or special, the sheriff of the county and the clerk of the commissioners, in the presence of and assisted by two justices of the peace of the county, shall draw such jury in the manner above described; and if a special term shall continue for more than two weeks, then for the weeks exceeding the two, a jury or juries may be drawn as in this section provided."

The challenge of the defendant is on two grounds: (1) That the jury was drawn within less than twenty days of the term of court. (2) That the sheriff of the county was not present in person at the drawing, and was represented by his deputy.

It is to be observed, in the first place, that the section under which this jury was drawn does not require the duty to be performed twenty days before a term of court, and that there is no limitation as to time in the section.

A preceding section (section 1959) does require the commissioners to draw a jury "at least twenty days before each regular or special term of the Superior Court," and in that and succeeding sections the manner of performing the duty is minutely prescribed, and it further appears in the section above quoted (1963) that the clerk, sheriff, and justices "shall draw such jury in the manner above described."

Note that the section does not say "at the time and in the manner above prescribed," and for the reason that the commissioners had all of the time up to twenty days before court within which to draw a jury, and it was only upon their failure that the clerk and other officers had the power to act, which of necessity must be within the twenty days.

If, however, the time for the performance of the duty was fixed by statute, we would not consider it material on this record, as no rights have been prejudiced, and would follow the rule in *Moore v. Guano Co.,* 130 N. C., 235, where the Court says: "The action of the commissioners, as to time and place of drawing the jury or revising the jury list is concerned, the statute is considered directory; and while it is their duty to do these things at the time and place the law directs them to be done, still if they are not done when and where they should be, but are *properly done* at another time and place, they will not be treated as irregularities. This is because the law directs the commissioners to perform these duties and to prevent delay in the administration of justice such acts are held to be directory, and where no injustice appears to have been done by such irregularity, the Court will, it seems, not make such irregularity a cause for discharging the panel."

The second objection to the jury presents greater difficulty, and its correct determination depends on whether "sheriff of the county," as used in the section, refers to the office or to the man holding the office, and, if it refers to the office, whether the duty to be performed is one properly belonging to a deputy. If the sections of the Revisal referring to the duties of sheriff are examined (and there are many of them) it will be found that deputy sheriffs are mentioned in only two or three. The direction is almost invariably that "the sheriff shall," etc., and as said in 35 Cyc., 1489, "The statutes frequently use the word 'sheriff' as a generic term, including not only the sheriff proper, but also deputy sheriffs." It is also generally recognized that the ministerial duties of the sheriff may be performed by the deputy, who acts for the sheriff and in his name.

Again quoting from 35 Cyc., 1516: "While the judicial functions of a sheriff cannot be delegated to another, the ministerial duties of the office may be performed by a deputy sheriff, or under-sheriff, who, however, performs the duties delegated to him, not in his own name or right, but as the representative of the sheriff, although he is recognized as a public officer. There are two kinds of deputies well known in practice: (1) A general deputy, or under-sheriff, who, by virtue of his appointment, has authority to execute all the ordinary duties of the sheriff, and who executes process without special power from the sheriff; and (2) a special deputy, who is an officer *pro hac vice* to execute a particular writ in some certain action and who acts under a specific and not a general appointment of authority.

"Deputy sheriffs are of two kinds: (*a*) A general deputy, or under-sheriff, who, by virtue of his appointment, has authority to execute all the ordinary duties of the office of sheriff (Com. Dig. tit. 'Viscount,' 542, B. 1); one who executes process without special authority from the sheriff, and may even delegate authority in the name of the sheriff, or its execution, to a special deputy. (*b*) A special deputy, who is an officer *pro hac vice* to execute a particular writ on some certain occasion, but acts under a specific and not a general appointment and authority. *Allen v. Smith,* 12 N. J. Law (7 Halst.), 159, 162.

"The deputy is an officer coeval in point of antiquity with the sheriff. The creation of deputies arises from an impossibility of the sheriff's performing all the duties of his office in person. The powers of the deputy have consequently been ascertained at an early date. The general criterion by which to test his authority is declared in the case of *Levett v. Farrar,* Cro. Eliz., 294, in which the Court said that if a writ be directed to the sheriff by the name of his office, and not by a particular name, and doth not expressly command him to execute it in person, the under-sheriff may execute it. *Tillotson v. Cheetham* (N. Y.), 2 Johns., 63, 70." 3 Words and Phrases, 2009.

If the deputy cannot at least perform ministerial duties for the sheriff, why have one? Of what use is the deputy if the sheriff must always be present in the execution of every duty?

Deputies, known as under-sheriffs, are appointed because the duties of the sheriff are more than one man can perform, and these duties frequently require action at different places at the same time, and the transaction of public business would be greatly impeded if their acts, in proper cases, were regarded as invalid and without authority of law.

The duties to be performed in the present case, while important, were simple, requiring no exercise of judgment, and consisted in standing by with three other officers and seeing a boy under 10 years of age take a scroll from one jury box and place it in another. The officers had no

LANIER *v.* GREENVILLE.

power to pass upon the competency of those drawn, and it does not appear that any name drawn from the first box was disqualified, or that this name was not placed on the list drawn for the term. In our opinion, the duty was ministerial, and one the deputy could perform.

Counsel for the defendant have presented respectable authority supporting the principle embraced in his prayer for instruction and in opposition to the instruction given by his Honor, but we have adhered to the rule, in line with the weight of authority, that in the assessment of damages for land taken for a public improvement, the measure of damages is the difference in value before and after the taking, less the special benefits, and that increased value to the land enjoyed in common with others affected by the improvement is not a special benefit.

The question was considered at the last term in *Campbell v. Comrs. of Davie Co.,* 173 N. C., 500, in which, after laying down the rule that special benefits are those not common to others, *Clark, C. J.,* says: "This is the rule laid down in *Bauman v. Ross,* 167 U. S., 548 (17 Sup. Ct., 966; 42 L. Ed., 270), in an exhaustive opinion, and the same rule has been applied in this State. *Asheville v. Johnston,* 71 N. C., 398; *R. R. v. Wicker,* 74 N. C., 220; *R. R. v. Land Co.,* 133 N. C., 266 (45 S. E., 589); *Bost v. Cabarrus,* 152 N. C., 531 (67 S. E., 1006); *R. R. v. Armfield,* 167 N. C., 464 (83 S. E., 809); also 2 Lewis on Em. Dom., 1187, par. 691."

We are less inclined to change the rule since it was held in *Miller v. Asheville, N. C.,* 112 N. C., 768, that it was within the power of the General Assembly to provide by statute that the damages should be reduced "not merely by the benefits special to the plaintiff, but by all the benefits accruing to him, either special or in common with others" (*Campbell v. Comrs.*), and the legislative body has declined to act.

We have examined the other exceptions, and find none justifying a new trial.

No error.

BROWN, J., dissenting: I am of opinion that the challenge to the array should have been sustained upon the ground that the jurors were not drawn by the persons authorized and designated by the statute. The statute, section 1963, is express that the *sheriff of the county* and the clerk of the commissioners, in the presence of and assisted by two justices of the peace, shall draw the jury. The sheriff was not present and did not assist in the drawing, but upon being notified by the clerk to the board of county commissioners that a jury would have to be drawn, simply told J. L. Taylor, his deputy, "to go help draw a jury."

I think the provisions of the statute are mandatory and the duties nondelegable, and that the sheriff has no more power to appoint another

to act for him than a member of the board of commissioners or the clerk of the board or the justices of the peace would have.

This is not the case of summoning talesmen under the supervision and direction of the court. It is drawing the regular panel of jurors from the body of the county, from which the grand jurors as well as petit jurors are to be selected. The persons authorized to perform this important function are selected because of their individual personality and supposed responsibility and integrity. The jurors selected may be called upon and pass upon a man's life or death.

To draw the jurors from the box is a judicial function of grave importance, requiring men of undoubted integrity, in order to prevent frauds. The discharge of this duty is entrusted to two judicial officers and two "lay judges," the clerk of the board and the sheriff of the county.

From time immemorial the office of sheriff has been recognized as one of great trust and responsibility, and he who fills it is elected by the people of his county and has the stamp of their approval and the seal of their confidence.

It is very appropriate that he should be named as one to discharge such an important duty as drawing the jurors who are to determine matters affecting the life, liberty, and property of their fellow-citizens.

There is no such office as "deputy sheriff" created by law. He is the sheriff's appointee, and there is no limit to the number he may appoint, as they are paid by him.

Trials by jury lie at the very foundation of our system of jurisprudence, and it is of vital importance to the welfare and safety of the State that the drawing of the jurors should be conducted by those appointed by law and safeguarded by observing the provisions of the statute.

It is, therefore, inconceivable to me that the Legislature should have contemplated that this solemn duty could be delegated by the sheriff or the other responsible officials to whom its discharge is entrusted.

MR. JUSTICE WALKER concurs in this opinion.