C. G. CLINE v. BERTRAM ERVIN BROWN II

No. 7421SC808

(Filed 18 December 1974)

1. **Libel and Slander § 10— deputy sheriff as public officer — criticism of official conduct — showing of actual malice required**

Plaintiff who was a deputy sheriff of Forsyth County was a public official within the meaning of *New York Times Co. v. Sullivan,* 376 U.S. 254, which held that the First and Fourteenth Amendments to the U. S. Constitution delimit a State's power to award damages to a public official in a suit for libel based upon defamatory criticism of his official conduct without proof that the defendant acted with actual malice.

2. **Libel and Slander § 10— conduct of deputy sheriff — letter requesting investigation not libelous**

    In this libel action where plaintiff alleged that defendant had written to the FBI asking for an investigation into the fatal shooting by plaintiff of one Mabe during the commission of a burglary by Mabe and another and that defendant had provided a newspaper a copy of the letter, the trial court properly concluded that the defendant's statements were made with no knowledge of the falsity thereof and without reckless disregard for their truth or falsity, since the words used in the letter were that plaintiff *"may* have a personal grudge" and *"may* have conspired" and, additionally, the letter was written to the proper law enforcement agency suggesting the possibility of an investigation, not accusing plaintiff of misconduct.

APPEAL by plaintiff from *Armstrong, Judge,* 28 May 1974 Session Superior Court held in FORSYTH County. Argued in the Court of Appeals 18 November 1974.

On 14 December 1973, plaintiff, a deputy sheriff with the Forsyth County Sheriff's Department in Winston-Salem, brought this action seeking compensatory and punitive damages to which he alleged he was entitled by reason of certain "slanderous, libelous and defamatory statements" made by defendant, which statements were made without just cause or provocation. He further alleged that defendant knew or should have known by the exercise of reasonable care that the statements were untrue, that plaintiff has been greatly embarrassed by the statements, and that in making or causing the statements to be published, defendant acted with malice toward plaintiff. Attached to the complaint as Exhibit A, incorporated in the complaint by reference, was a copy of an article published by the Winston-Salem *Journal,* Friday morning, 14 December 1973. The article reported that defendant had written to the Federal Bureau of Investigation asking for an investigation into the fatal shooting by plaintiff of one, Marshall McCree Mabe, during the commission of a burglary by Mabe and another. The article stated that the letter said "that the shooting may have been in violation of federal laws and that one of the deputies who fired at Mabe may have had a personal grudge against him" and that "there may have been a 'conspiracy to take Mabe's life.'" The article stated that defendant's letter contained the statement "[w]e have reason to believe that the agents responsible for Mabe's death may have conspired to 'injure, threaten or intimidate' Mabe 'under color of state law.'" The letter advised that the deputies, acting on tips from an informant, had staked out the store in which the killing took

Cline v. Brown

place, and that no one other than Mabe's accomplice (naming him) could have known about the robbery in advance and that the accomplice, who was not arrested, must have been the informant.

Defendant answered the complaint first alleging plaintiff's failure to comply with G.S. 99-1 entitling defendant to dismissal or in the alternative to dismissal of at least the claim for punitive damages and then admitting writing a letter to the United States Department of Justice and the Federal Bureau of Investigation and furnishing a copy of that letter to a staff reporter for the Winston-Salem *Journal,* but denying knowledge that the statements therein were untrue or that plaintiff had suffered embarrassment or damage or that defendant had acted with malice.

As defenses to the action defendant pleaded absolute privilege in that the statements were made by an attorney acting in the interests of a client and to correct injustices believed to have been done to the client; qualified privilege in that plaintiff, as a deputy sheriff, is a public official and the statements were made concerning his official conduct and concerning an event of public interest; that the information was privileged by reason of the fact that plaintiff and other members of the Sheriff's Department had, for several days, furnished information to the newspaper, and defendant was entitled to make statements in defense of his client; that the statements made by defendant are true.

Defendant subsequently filed written motion for summary judgment, stating therein the rule and his grounds for the motion. With the motion he filed the affidavits of Mrs. Mabe, defendant, and Charles O. Reed, and a copy of letter to the Federal Bureau of Investigation. Plaintiff filed written response to the motion and plaintiff's affidavit.

The grounds for defendant's motion for summary judgment were "that the allegedly libelous and slanderous remarks were qualifiedly privileged under the First Amendment to the United States Constitution as interpreted by the United States Supreme Court in *New York Times v. Sullivan* in that, the plaintiff as a Deputy Sheriff, is a public official and the statements were made of and concerning his official conduct and concerning an event of public interest; that the complaint fails to properly allege malice within the rule of *New York Times v. Sullivan;*

that the allegedly libelous and slanderous statements were in fact made without actual malice as defined in *New York Times v. Sullivan* as more fully appears in the affidavits presented by defendant in support of this motion; and, that no genuine issue of fact exists with respect to the absence of malice as defined in *New York Times v. Sullivan* . . ."

Upon hearing the court found the following facts to be undisputed:

"1. The plaintiff, C. G. Cline, is and was during the times in question, a Deputy Sheriff of Forsyth County;

2. The statements made by the defendant were made of and concerning the plaintiff in the performance of his duties as a Deputy Sheriff of Forsyth County;

3. The defendant had been supplied with the information set forth in the affidavits offered on his behalf by various persons and by the Winston-Salem newspaper, as set forth in the affidavits;

4. Although the information supplied to defendant may or may not have been true, the defendant believed it to be true at the time he made and published the statements in question."

Based on those facts "and the law applicable thereto" the court made the following conclusions of law:

"1. The plaintiff is a public official within the meaning of *New York Times v. Sullivan;*

2. The statements made by the defendant were made of and concerning a public official in the performance of his duties as a public official;

3. The defendant's statements were made without 'actual malice' as defined in *New York Times v. Sullivan,* in that the defendant did not know his statements to be false nor did he act with reckless disregard for the truth or falsity of his statements;

4. No genuine issue of fact exists with regard to the presence of actual malice as defined in *New York Times v. Sullivan.*"

To the finding and conclusion that there was no genuine issue as to any material fact the plaintiff excepted and also

excepted to the entering and signing of the judgment and appealed therefrom.

*Wilson and Morrow, by John F. Morrow, for plaintiff appellant.*

*Jordan, Wright, Nichols, Caffrey & Hill, by William D. Caffrey and Janet L. Covey, for defendant appellee.*

MORRIS, Judge.

Defendant Brown contends that plaintiff's action is barred by the decision in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed. 2d 686 (1964), which held that the First and Fourteenth Amendments to the United States Constitution delimit a State's power to award damages to a public official in a suit for libel based upon defamatory criticism of his official conduct without proof that the defendant acted with actual malice—that is, with knowledge that it was false or with reckless disregard of whether it was false. The Court there held that the Chief of Police of Montgomery, Alabama, was a public official.

There is no doubt but that plaintiff was, at the time of the occurrence, a deputy sheriff of Forsyth County. Nor is there any dispute about the fact that Mabe was engaged in criminal activity at the time of his death and that the alleged defamatory statements made of and concerning plaintiff were related to his official conduct.

For determination here are the questions: Is a deputy sheriff a public official within the meaning of *New York Times Co. v. Sullivan,* and if so, does the record disclose the existence of a genuine issue of fact as to whether the defendant published the alleged libel with actual malice as that term was defined in the New York Times case.

[1] We turn first to the question of whether plaintiff is entitled to the benefit of the rule enunciated in *New York Times Co. v. Sullivan, supra.* The Court in *Sullivan* said that it was considering the case "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan, supra,* 11 L.Ed. 2d 686, at 701. The advantages

to the public generally from free and open discussion are so great, and the importance to the State so vast, that they more than counterbalance the occasional injury to the reputations of individuals.

The Court in *Sullivan* did not specify how far down the governmental hierarchy the privilege of comment on governmental conduct would go. Subsequently, however, it has been applied to a variety of law enforcement officers: Deputy Chief of Detectives of the Chicago police force [*Time, Inc. v. Pape,* 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed. 2d 45 (1971)]; deputy sheriff in East Baton Rouge Parish, Louisiana [*St. Armant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed. 2d 262 (1968)]; chief of police, Clarksdale, Miss. [*Henry v. Collins,* 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed. 2d 892 (1965)]; sergeant, Wilmington, Del. police force [*Jackson v. Filliben,* Del. Supr., 281 A. 2d 604 (1971)]; patrolman, Norwalk, Conn. police force [*Moriarty v. Lippe, et al.,* 162 Conn. 371, 294 A. 2d 326 (1972)]; police sergeant, Countryside, Ill. [*Suchomel v. Suburban Life News-papers, Inc.,* 84 Ill. App. 2d 239, 228 N.E. 2d 172 (1967)]; patrolman in Skokie, Ill., [*Coursey v. Greater Niles Twp. Pub. Corp.,* 40 Ill. 2d 257, 239 N.E. 2d 837 (1968)]; police lieutenant [*Gilligan v. King,* 48 Misc. 2d 212, 264 N.Y.S. 2d 309 (1965)]. However, later in *Rosenblatt v. Baer,* 383 U.S. 75, at 85, 86 S.Ct. 669, 15 L.Ed. 2d 597, at p. 605, (1966), the Court said:

> "Criticism of those responsibe for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs."

While we readily concede that there may be cases in which the determination of this question might raise issues for the trier of fact, we do not perceive that to be the case here. In *Gowens v. Alamance County,* 216 N.C. 107, 109, 3 S.E. 2d 339 (1939), the Court said:

> "The right of the sheriff to appoint deputies is a common law right. 'The deputy is an officer coeval in point of antiquity with the sheriff.' *Lanier v. Greenville,* 174 N.C. 311, 93 S.E. 850; *Borders v. Cline,* 212 N.C. 472, 193 S.E. 826. He is the deputy of the sheriff, one appointed to act

ordinarily for the sheriff and not in his own name, person or right, and although ordinarily appointed by the sheriff, is considered a public officer. 57 C.J. 731, Sec. 4. . . ."

And in *Borders v. Cline,* 212 N.C. 472, 476, 193 S.E. 826 (1937), it was said:

> "The duties and authority of a deputy sheriff relate only to the ministerial duties imposed by law upon the sheriff. How those duties are to be performed and the ends to be accomplished are as prescribed and directed by law, and not in accordance with the direction and discretion of the sheriff. By appointing a deputy the sheriff merely delegates to him the authority to execute ministerial functions of the office of sheriff. Those functions are of a public character."

The appointment of deputies sheriff is provided for by the General Assembly. G.S. 153A-103. The relationship between a sheriff and his deputy is, then, an official and not a private relationship. The deputy is a representative of the sheriff in his official capacity. He is a public officer whose authority and duties are regulated and prescribed by law. The public generally regards the acts of a deputy sheriff as the acts of the sheriff himself. The sheriff's position in government vests in him and his deputies "substantial responsibility for or control over the conduct of governmental affairs." This is certainly true where law enforcement and police functions are concerned. Additionally, though the office of deputy sheriff may be a comparatively low ranking one in the hierarchy of government, nevertheless, if the deputy's office be abused, it has great potential for social harm and thus invites independent interest in the qualifications and performance of the person or persons who hold the position. So that, in addition to the fact that technically under our court decisions a deputy sheriff is a public official, the test of *Rosenblatt v. Baer, supra,* has been met, and defendant is entitled to the benefit of the rule of *New York Times Co. v. Sullivan.*

Having determined that defendant, as an individual citizen critical of official conduct, is entitled to the constitutional guaranties which require a public official to prove that the alleged libelous statements were made with actual malice, and assuming, without deciding, that the complaint sufficiently alleges actual malice, we turn now to the question of whether

the record before us discloses the existence of a genuine issue of fact as to whether defendant published the alleged libelous statement with actual malice.

[2]    The complaint alleges that the libelous statements were "one of the deputies who fired at Mabe may have had a personal grudge against him" and "[w]e have reason to believe that the agents responsible for Mabe's death may have conspired to 'injure, threaten or intimidate' Mabe 'under color of state law' " and ". . . that Deputy C. G. Cline, who along with Deputy E. P. Oldham fired at Mabe, once made comments to another Legal Aid Society lawyer indicating that he may have had a grudge against Mabe." Defendant does not deny the contents of the letter nor that a copy was given to the newspaper for publication.

Actual malice is defined in *New York Times Co. v. Sullivan* as knowledge of falsity or with a reckless disregard of whether it was false. The affidavit filed by defendant gave the source of his information and leads inescapably to the conclusion that, if the statements were in any way false, defendant had no knowledge of their falsity. The contents of his affidavit with respect thereto are undisputed, nor does any affidavit submitted by plaintiff in opposition to the affidavits of defendant raise any issue of fact with respect thereto. The phrases themselves and the context of events and circumstances under which the letter was written belie any "reckless disregard" of whether the statements were false. The words used are *"may* have a personal grudge," *"may* have conspired." The caution inherent in the words does not bespeak "reckless disregard." Additionally, the letter was written to the proper law enforcement agency suggesting the possibility of an investigation—not accusing the officer of misconduct.

We agree with the trial court's conclusion that the defendant's statements were made with no knowledge of the falsity thereof and without "reckless disregard" for the truth or falsity of his statements.

In the court's conclusion that "no genuine issue of fact exists with regard to the presence of actual malice as defined in *New York Times v. Sullivan*" we concur.

Affirmed.

Judges CAMPBELL and MARTIN concur.